**Clarence E. BRISCOE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 7, 1992.
Decided: April 23, 1992.

Timothy N. Collins, Asst. Public Defender, Wilmington, for appellant.

Loren C. Meyers, Deputy Atty. Gen., Wilmington, for appellee.

Before HORSEY, WALSH, and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Clarence Briscoe ("Briscoe"), was convicted, following a jury trial in the Superior Court, of one count of Delivery of Cocaine. 16 *Del.C.* § 4751. On March 8, 1991, the Superior Court sentenced Briscoe to a period of incarceration for thirty years, to be suspended for probation after Briscoe has served a mandatory minimum term of incarceration for fifteen years. *See* 16 *Del.C.* § 4763. This is Briscoe's direct appeal.

In this appeal, Briscoe contends that he did not knowingly and intelligently waive his Sixth Amendment right to counsel. Specifically, Briscoe argues that the Superior Court committed reversible error when it permitted him to proceed *pro se* without advising him of the hazards of self-representation. The record reflects that the procedural prerequisites to an effective waiver of the Sixth Amendment right to counsel, as mandated by the federal courts, were not followed. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461

(1938); *United States v. Welty*, 674 F.2d 185 (3d Cir.1982); *United States ex rel. Axselle v. Redman*, 624 F.Supp. 332 (D.Del.1985). Accordingly, the judgment of the Superior Court must be reversed.

*Facts*

On the day of his trial, after the jury had been selected, Briscoe expressed his dissatisfaction with his attorney, an Assistant Public Defender, who had been appointed to represent him at trial. Briscoe told the trial judge that his attorney "lied constantly," was collaborating with the prosecutor, and had previously permitted the trial to be continued without Briscoe's permission. Briscoe also stated that he had filed a lawsuit against his attorney and the Public Defender's Office as a result of their alleged unethical representation of him. Briscoe concluded his vitriolic remarks by informing the trial judge that he did "not wish any representation from the Public Defender's Office."

In response to these allegations, Briscoe's attorney acknowledged that his relationship with Briscoe was acrimonious. According to the Assistant Public Defender, the difficult relationship between them had developed because Briscoe, against the attorney's advice, wanted to subpoena the Mayor of Wilmington and the head of the Department of Parks and Recreation to testify, in order to develop Briscoe's theory of a conspiracy. Briscoe also wanted to present an entrapment defense, which the attorney believed would not be supported by the evidence.

After determining that Briscoe lacked good cause for substituted counsel, the trial judge denied his request. Briscoe was told that the trial would proceed with his appointed counsel representing him. Before the jury was brought in, Briscoe's appointed attorney asked for clarification:

THE COURT: Bring in the jury, please.

[DEFENSE COUNSEL]: Before we do that, your Honor, the Court indicated that I'm not to be discharged; but at this point, I'm a little confused as to what lines of questioning Mr. Briscoe wants to develop.

Does—did he implicitly make a request to cross-examine the witnesses or no?

THE COURT: He has not.

Mr. Briscoe, are you going to request that you cross-examine the witness or are you going to let [your attorney] do it for you?

THE DEFENDANT: I do not wish [my appointed counsel] to represent me, your Honor.

THE COURT: There has been nothing shown right now by you that [your attorney] has anything but your best interest as his main aim in presenting this case on your behalf. You haven't shown anything.

You have made some wild allegations that have absolutely no substance. The issue we have before us right now: Do you wish to have [your attorney] cross-examine the witnesses on your behalf?

THE DEFENDANT: No, sir.

THE COURT: I am going to instruct [your attorney] to do the best he can.... I presume he is prepared to cross-examine the witnesses called by the State and I am going to instruct him to do so.

The trial judge again instructed the bailiff to bring in the jury. However, Briscoe immediately interrupted that process with a question:

THE DEFENDANT: Your Honor, you said that I could question the witness[es] myself?

THE COURT: Is that your request at this time?

THE DEFENDANT: Yes, sir.

THE COURT: You may cross-examine the witnesses yourself, if you wish to; but they have to be on the pertinent issues of testimony presented. Do you understand that, Mr. Briscoe?

THE DEFENDANT: Not really, your Honor, but since [my appointed counsel] is here, I think since he's going to be a friend of the Court, then maybe he can guide me through this, your Honor.

THE COURT: All right. Thank you.

Notwithstanding this colloquy, there is no other evidence in the record that, prior to the commencement of trial, Briscoe ever requested to represent himself. Consequently, the record indicates that the trial judge did not warn Briscoe before trial about the dangers of self-representation. Nevertheless, although Briscoe's appointed counsel made an opening statement to the jury on Briscoe's behalf, the trial proceeded thereafter with Briscoe acting as his own attorney and his appointed attorney serving as standby counsel.

Briscoe himself conducted the cross-examination of each prosecution witness during the presentation of the State's case-in-chief and made objections to the State's evidence. Briscoe's appointed attorney also made several evidentiary objections and moved for a directed verdict at the close of the State's case. Following the presentation of the State's case, the Superior Court acceded to Briscoe's requests to call his own defense witnesses and to conduct the direct examination of those witnesses.

One of the witnesses called by Briscoe was Detective Lawrence Collins ("Detective Collins") of the Wilmington police department. Detective Collins, who was involved in the investigation that led to Briscoe's arrest, had not been called as a witness by the State during its case-in-chief. During the direct examination of Detective Collins, Briscoe elicited evidence of his own prior criminal record. At that point, the trial judge ordered the jury out of the courtroom. The judge warned Briscoe, on the record, that Briscoe was "hanging" himself, and that "by asking stupid questions" of Detective Collins, he was allowing the "witness to nail [him] to the cross."

Briscoe next called as a defense witness Reginald Harris ("Harris"), the informant who allegedly arranged for the police to obtain cocaine from Briscoe. During the direct examination of this witness, Briscoe became emotionally distraught. After a brief recess, and an unreported sidebar conference, the trial judge refused to allow Briscoe to resume the direct examination of Harris and, instead, instructed Briscoe's appointed counsel to complete that task. Nevertheless, the trial judge's summary of this unreported sidebar conference indicates that the trial judge instructed Briscoe's appointed attorney to ask questions of Harris under Briscoe's direction.

Subsequently, the trial judge allowed Briscoe to testify in narrative form. During his testimony, Briscoe admitted delivering cocaine. The only testimony Briscoe offered in contradiction to the State's case was that he had not delivered cocaine to the undercover police officer, as the State had alleged, but instead had delivered the cocaine to Harris. Briscoe stated that he had engaged in such conduct out of friendship for Harris.

Prior to the presentation of Briscoe's case, the Assistant Public Defender had informed the trial judge that Briscoe intended to make his own closing argument. After Briscoe rested his case, but before closing arguments, at the request of Briscoe's appointed attorney, the trial judge engaged in the following colloquy with Briscoe:

THE COURT: Do you understand you are bound by the same rules as if [your attorney] was giving the closing statement for you? You may not express anything that you personally believe in, but only what the evidence shows; do you understand that?

THE DEFENDANT: I'll try my best, your Honor.

THE COURT: Okay. And if you make a wrong statement about the law, I must correct the jury on that point; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

Following a prayer conference, the trial judge ruled that he would not give the jury an instruction on the defense of entrapment because Briscoe had failed to present any evidence that he was induced to deliver cocaine by a law enforcement officer. The trial judge then allowed Briscoe's appointed counsel to make an argument, on the record, as to why Briscoe should be permitted to reopen his case to present testimony that would support an entrapment instruc-

tion. The motion to reopen Briscoe's case was denied. Briscoe was convicted as charged.

### Eve of Trial

### Request for Substitute Counsel

■ When a defendant seeks new counsel, on the eve of trial, the trial court must engage in a careful inquiry. The trial court must initially determine if the reasons for the defendant's request for substitute counsel constitute good cause to justify a continuance of the trial, in order to allow new counsel to be obtained. *United States v. Welty,* 674 F.2d 185, 187 (3d Cir. 1982). If the trial court determines that the defendant is not entitled to a continuance, in order to engage new counsel, the defendant must then choose between two constitutional options, *either* continuing with his existing counsel *or* proceeding to trial *pro se. Id.*[1] The latter choice necessitates the careful pursuit of a second line of inquiry by the trial court. *Id.*

■ The decision to proceed *pro se* involves a waiver of a defendant's Sixth Amendment right to counsel. *Id.* The benefits associated with the right to counsel must be waived knowingly and intelligently. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). The United States Supreme Court has held that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Id.* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,*

317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

■ A determination of whether a defendant has intelligently waived the right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the defendant. *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023. The trial court is entrusted with the responsibility of ensuring that the decision by a defendant to represent himself is made intelligently and competently. *Id.* at 465, 58 S.Ct. at 1023. It is undisputed that conducting a "searching inquiry" into waiver of counsel poses "a difficult task" for the trial court, particularly when the defendant appears "experienced in the litigation process and [when] friction has arisen between the defendant and his then-counsel." *United States v. Welty,* 674 F.2d at 191. However, a trial judge routinely conducts such inquiries in considering guilty pleas, and is expected to make no less of an inquiry before permitting a defendant to proceed *pro se. Id. See also Watson v. State,* Del.Supr., 564 A.2d 1107 (1989).

■ " 'A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances,' *id.,* and only after bringing home to the defendant the perils he faces in dispensing with legal representation." *United States v. Welty,* 674 F.2d at 189 (quoting *Johnson v. Zerbst,* 304 U.S. at 465, 58 S.Ct. at 1023). The fact that an accused may tell the trial court that he is aware of his right to counsel, and desires to waive that right, does not eliminate the trial court's responsibility to conduct a "searching inquiry." *Id.* In order to ensure that a defendant truly appreciates the "dangers and disadvantages of

---

1. There is no constitutional right for a defendant to be appointed as co-counsel. *Hooks v. State,* Del.Supr., 416 A.2d 189, 198 (1980); *Haskins v. State,* Del.Supr., 551 A.2d 65, 66 (1988). "The potential for undue delay and jury confusion is always present when more than one attorney tries a case. Further, where one of the co-counsel is the accused, conflicts and disagree-

ments as to trial strategy are almost inevitable." *United States v. Mosely,* 810 F.2d 93, 98 (6th Cir.1987). Therefore, a court should, as an exercise of discretion, permit a defendant to act as co-counsel only in exceptional situations. *Id.; United States v. Williams,* 534 F.2d 119, 123 (8th Cir.1976).

self-representation," the trial court must advise the defendant in unequivocal terms both of the technical problems which may be encountered in acting as his own attorney and of the risks involved if the defense efforts are unsuccessful. *Id.* at 188.

■ The Court of Appeals for the Third Circuit has enunciated guidelines for a trial court to use in determining whether a defendant is knowingly and intelligently waiving the Sixth Amendment right to counsel. *See United States v. Welty,* 674 F.2d 185 (3d Cir.1982). The trial court should advise the defendant, for example:

(1) that the defendant will have to conduct his defense in accordance with the rules of evidence and criminal procedure, rules with which he may not be familiar;

(2) that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law;

(3) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

(4) the nature of the charges,

(5) the statutory offenses included within them,

(6) the range of allowable punishments thereunder,

(7) possible defenses to the charges and circumstances in mitigation thereof, and

(8) all other facts essential to a broad understanding of the whole matter.

*Id.* at 188–89 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion)). After undertaking such an inquiry, "whether there is a proper waiver should be clearly determined by the trial court," and that determination must appear upon the record. *Johnson v. Zerbst,* 304 U.S. at 465, 58 S.Ct. at 1023.

### This Case

### Waiver Ineffective

The parties agree that the holding of *Welty* is determinative of the claim presented to this Court by Briscoe. We have independently concluded that the *ratio decidendi* of *Welty* is dispositive in this matter. Consequently, we must apply those legal precepts to the factual circumstances presented by Briscoe in this appeal.

■ A trial court must first decide whether defendant's request for new counsel, on the eve of trial, is substantial enough to justify a continuance of the trial in order to allow the defendant to obtain new counsel. *United States v. Welty,* 674 F.2d at 188. If, after making the appropriate inquiries, the trial court determines that the defendant has not shown good cause for a substitution of counsel, it may "properly insist that the defendant choose between representation by his existing counsel and proceeding *pro se.*" *Id.* "It is vital that the trial court take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and waiver of counsel. Perfunctory questioning is not sufficient." *Id.* at 187.

The first step of the analysis required by *Welty* is to determine whether the trial court made sufficient inquiry into the reasons for Briscoe's dissatisfaction with his attorney on the eve of trial. *Id.* In the case *sub judice,* the trial judge allowed Briscoe to state, at length, the reasons for his disagreements with counsel. Thereafter, the record reflects that the trial judge denied Briscoe's request for new counsel. The efficacy of the foregoing inquiry and the propriety of the trial court's decision not to appoint substitute counsel are not at issue in this appeal.

■ At issue in this appeal, however, is the second inquiry that a trial court must make pursuant to the holding in *Welty,* after a request for substituted counsel has been denied on the eve of trial, i.e., whether Briscoe wanted to retain his existing counsel or to proceed *pro se. Id.* A condition precedent to the latter decision is a knowing and intelligent waiver of the Sixth Amendment right to counsel. The State acknowledges that Briscoe was permitted to proceed *pro se* without any colloquy concerning the hazards of self-representation, notwithstanding the mandate of the holding in *Welty.*

Nevertheless, the State argues that Briscoe was not deprived of his Sixth Amendment right to counsel. The State's argument is premised upon the fact that, in accordance with the well-established practice in Delaware, the Superior Court permitted Briscoe to proceed *pro se* with the assistance of standby counsel, who took an active part in the trial. The Superior Court's action, and consequently the State's position, is supported by some prior decisions of this Court. *See United States ex rel. Axselle v. Redman,* 624 F.Supp. 332, 339 (D.Del.1985) (citing *Axselle v. State,* Del.Supr., 483 A.2d 632 (1984); *Hicks v. State,* Del.Supr., 482 A.2d 765 (1984)).

This Court has previously held, in construing *Welty,* that a defendant's Sixth Amendment right to counsel was not violated, even though he had not made a complete waiver of that right, when he proceeded *pro se* and was provided with a standby attorney who was familiar with the case and was ready to act upon the defendant's behalf. *Id.* However, the foregoing interpretation of the holding in *Welty* by this Court was unequivocally rejected by the Delaware District Court. *Id.* In setting aside this Court's decision in *Axselle,* and vacating this Court's affirmance of the defendant's convictions, the Delaware District Court stated:

> The mere appointment of standby counsel can never cure a defective waiver. The issue is whether the presence of standby counsel in the factual context of this case cures an ineffective waiver of counsel. Although there might be circumstances in which the performance of standby counsel may cure a defective waiver, this is not such a case.

*Id.* at 339.

▌ When a trial court concludes the inquiries articulated in *Welty* and considers "all other facts," it may decide to permit the defendant to proceed *pro se* and, in the exercise of its discretion, to appoint standby counsel. A defendant's Sixth Amendment right to proceed *pro se* is not violated when a trial judge appoints standby counsel—even over the defendant's objection—"to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975).[2] *See Pennell v. State,* Del.Supr., 604 A.2d 1368 (1992). However, the federal courts have clearly held that the appointment of standby counsel, for a defendant who proceeds *pro se,* is not an acceptable alternative to a knowing and intelligent waiver of the Sixth Amendment right to counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Welty,* 674 F.2d 185 (3d Cir.1982); *United States ex rel. Axselle v. Redman,* 624 F.Supp. 332 (D.Del.1985).

### This Case

### Ineffective Waiver Not Cured

After denying Briscoe's motion for a new attorney, the trial judge permitted Briscoe to proceed *pro se* without advising him of the hazards of self-representation. Therefore, that void in the record unambiguously establishes that Briscoe did not knowingly and intelligently waive his right to counsel, as required by *Zerbst, Welty,* and *Axselle.* However, Briscoe's appointed attorney did continue in the role of standby counsel during trial. Consequently, the dispositive question which must now be answered is whether Briscoe's ineffective waiver of counsel was cured by the performance of his standby counsel. *United States v. Welty,* 674 F.2d at 339.

During Briscoe's examination of the first witness called on behalf of the defense, Detective Collins, the following colloquy took place, after the trial judge interpreted that examination *sua sponte* and asked the jury to be taken out of the courtroom:

---

**2.** The trial court may also decide to appoint standby counsel, in the exercise of its discretion, "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine ob-

stacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins,* 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984).

THE COURT: Mr. Briscoe, the Supreme Court of the United States and the Supreme Court of Delaware tell the trial courts that if a man wishes to represent himself, he has the right to do so, and as a consequence, *I am allowing you to represent yourself.*

Having discussed this with the attorneys, I know that you have been involved in other litigation before. *But in all fairness to you, I must tell you that the questions you are asking this witness, you are hanging yourself, literally. Do you understand that?*

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: There was absolutely no need to bring out your prior conviction before this jury, but you did so, Mr. Briscoe.

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: *Do you understand that if the State had done that, I would have to declare a mistrial, but you did it yourself, so I can't declare a mistrial. Do you understand that?*

THE DEFENDANT: Yes, your Honor.

THE COURT: By going into your previous drug conviction, the jury is getting a very unfavorable view of your past; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: *And by asking stupid questions of this witness, you are allowing this witness to nail you to the cross; do you understand that?*

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: *Now, if you want to continue, I will allow you to continue, Mr. Briscoe, because you have that right. But I must tell you that you are literally making the case for the State yourself; do you understand that?*

THE DEFENDANT: Yes, your Honor.

THE COURT: And if you want to continue, I will allow you to continue.  .

Do you understand where I am coming from, Mr. Briscoe?

My function is to make sure that you get a fair trial; and we do so with the least inconvenience to the jury, members of the public and society, as possible; but what you are doing to yourself, I have—*I must tell you, you are convicting yourself, Mr. Briscoe, before this jury. Do you understand that?*

THE DEFENDANT: Yes, sir, your Honor.

*But I also understand that you realize, your Honor, that I'm a layman of the law. You realize, your Honor, the whole circumstances; I did not wish to represent myself.*

THE COURT: [Your attorney] is here, representing you. [He] was court-appointed to represent you. He is a trained lawyer from the Public Defender's Office, who has had a tremendous amount of experience in drug cases; but you refused it.

How old are you? You are in your forties; you have been through the system before. You are well aware of it. If you wish to continue, I will allow you to continue, Mr. Briscoe. Do you understand me?

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: Are you ready to proceed?

THE DEFENDANT: Yes, sir, your Honor.

(emphasis added).

After all of the trial testimony had been completed, prior to Briscoe's closing argument to the jury *pro se*, the following exchange between the trial judge and Briscoe's appointed attorney occurred, which poignantly summarizes the egregious results of Briscoe's self-representation:

[DEFENSE COUNSEL]: ... But I'd also like to explain to the court, for the record, the communications between Mr. Briscoe and myself have been difficult, to say the least, and I really don't think I can be expected to predict some of the things he's going to do if he doesn't tell me or discuss what he's going to do with me, and then he gets himself into that predicament in what essentially is a *pro se* situation, and it appears as if I didn't

properly advise him of the consequences. And I don't think that's true.

.    .    .    .    .

THE COURT: I agree with you ... I gave Mr. Briscoe every opportunity yesterday and today, the opportunity to consult with you, and I asked him if he had anything else further to say. And I realized that he did not testify he was induced to sell the cocaine to Detective Booker or Mr. Harris. I gave Mr. Briscoe every opportunity to allow you to defend him and he insisted. I even interrupted his examination this morning of Detective Collins, telling him what he was doing to himself.

I can't try the case for Mr. Briscoe. I advised him to allow you to continue to represent him. I told him yesterday, you should continue to represent him. If Mr. Briscoe wants to handle this himself, he has to suffer the consequences and he has that right and he did it.

The record reflects that Briscoe's attorney participated in the presentation of Briscoe's defense by making the opening statement, raising several objections, proffering evidence at Briscoe's request, completing the direct examination of Reginald Harris at the request of the trial judge and making several motions. *See McKaskle v. Wiggins*, 465 U.S. 168, 176–177, 104 S.Ct. 944, 949–950, 79 L.Ed.2d 122 (1984). However, notwithstanding this participation, Briscoe, not standby counsel, continued to conduct all other aspects of his own defense and to make all of the strategic decisions normally made by counsel. *Id.* Thus, the record in this case does not support a conclusion that Briscoe's standby counsel in any sense controlled the course of the litigation or undermined Briscoe's "appearance before the jury in the status of a *pro se* defendant." [3] *Id.* at 185, 104 S.Ct. at 954. Moreover, evidence of the strained relationship that existed between Briscoe and his attorney is replete throughout the record. *See id.*

The circumstances in this case are strikingly similar to those which were presented in *United States ex rel. Axselle v. Redman*, 624 F.Supp. 332 (D.Del.1985). The defendant in *Axselle*, like Briscoe, proceeded *pro se* without being properly warned, in advance, of the dangers of self-representation. Consequently, the defendant elected to proceed at trial *pro se* without making a knowing and intelligent waiver of his right to counsel. Even though standby counsel actively participated in the presentation of the defense in *Axselle*, the Delaware District Court held the performance of standby counsel did not cure an ineffective waiver of the right to counsel. *A fortiori*, in the case *sub judice*, in view of Briscoe's stultifying effort at self-representation, the controlling federal precedents compel this Court to hold that the participation by standby counsel at Briscoe's trial did not cure Briscoe's admittedly ineffective waiver of his Sixth Amendment right to counsel. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Welty*, 674 F.2d 185 (3d Cir.1982); *United States ex rel. Axselle v. Redman*, 624 F.Supp. 332 (D.Del.1985).[4]

### Conclusion

The judgment of the Superior Court is REVERSED. This matter is remanded for a new trial.

---

**3.** In *McKaskle*, it was also noted that the unsolicited participation of standby counsel is not a *per se* violation of the right to self-representation. *See McKaskle v. Wiggins*, 465 U.S. at 183, 104 S.Ct. at 953–954.

**4.** *Accord Browne v. State*, Del.Supr., 567 A.2d 419 (1989) (ORDER).