Christopher MOORE,[1] Respondent
Below, Appellant,

v.

Charlene M. HALL, Petitioner
Below, Appellee.

No. 27, 2012.

Supreme Court of Delaware.

Submitted: Jan. 23, 2013.
Decided: Feb. 15, 2013.

1. The Court has assigned pseudonyms to the parties pursuant to Supr. Ct. R. 7(d).

William J. Wade, Esquire (argued), Kelly E. Farnan, Esquire, Jaclyn C. Levy, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, for appellant.

David C. Gagne, Esquire, Woloshin, Lynch, Natalie & Gagne, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER, JACOBS, RIDGELY, Justices and GLASSCOCK, Vice Chancellor,[2] constituting the Court en Banc.

HOLLAND, Justice.

Charlene M. Hall (the "Mother") filed a petition to terminate the parental rights of Christopher Moore (the "Father") with regard to a child (the "Child") born on August 24, 2005. The Family Court granted the Mother's petition. This is the Father's appeal from that final judgment.

The Father has raised two issues. First, he argues that the Family Court violated his right to due process under the United States and Delaware Constitutions by not appointing new counsel to represent him, after it allowed his court-appointed attorney to withdraw. Second, the Father contends that the record does not support the Family Court's decision to terminate his parental rights.

We have concluded that the Father's due process rights were violated. Therefore, this matter must be reversed and remanded to the Family Court for a new hearing after an attorney is appointed to represent the Father. Consequently, we do not address the Father's second argument.

### Facts

The Father and the Mother have never been married to one another. The Father and the Mother began dating in March, 2003. They began living together, but then separated in August, 2005. The Mother gave birth to the Child on August 24, 2005. The Father was not present for the Child's birth. The Father and the Mother reconciled and began living together again in September, 2005. They ended their relationship in February or March of 2006. In July, 2006, the Mother alleged domestic abuse and obtained a Protection from Abuse Order against the Father.

The Father was incarcerated in December of 2006, and is currently serving a thirteen year sentence for Burglary in the Second Degree at the James T. Vaughn Correctional Center. The Father's criminal record indicates a "good time release date" of January 29, 2019.

The Father has not seen the Child since the Child was nine months old. According to the Father, he does not have the Child's address and has not contacted the Child from prison. In his answer to the Mother's petition, the Father alleges the Mother "left for work and daycare with [Child], never to return." The Child has lived with the Mother since birth and with the Mother and her husband since approximately the age of two.

On March 22, 2011, the Mother filed a Petition for the Termination of Parental Rights ("TPR"). On August 18, 2011, the Family Court appointed counsel to represent the Father, after finding him indigent. On October 31, 2011, the Father's appointed counsel filed a motion to withdraw from her representation of the Father and a

---

**2.** Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

motion to continue the termination proceedings that were scheduled for December 1, 2011.

The Family Court held a hearing on the motion to withdraw on November 18, 2011. At the hearing, the Father's court-appointed counsel stated that "there's been a breakdown in the lawyer/client relationship." In addition to requesting leave to withdraw, the Father's appointed counsel requested "that the hearing be continued for a few months to allow [the Father] to obtain new representation given the importance of the issues [to be decided] in a few weeks."

The Family Court asked the Father to state his position on his attorney's request to withdraw. The Father stated that he agreed. The Family Court then asked the Father, who is both indigent and incarcerated, if he was "going to hire new counsel." The Father stated that he was not. The Family Court then told the Father: "[Y]ou're going to represent yourself. I'm not going to appoint another attorney because you can't get along with your present attorney." The Father stated that "it's not that we can't get along, it's just that nothing was done." The Father then explained why he felt nothing was done. The Family Court did not ask the Father or his appointed counsel any further questions.

The Family Court granted the Father's counsel's request to withdraw, but ordered the Father's counsel to "remain as standby counsel" for the Father "in the event that he requests legal advice from [counsel] on legal issues that may arise during the trial." The Family Court stated that standby counsel's role was only advisory and that the Father "will be trying his own case or he will be retaining other counsel to represent him." The Family Court then denied the continuance, finding no reason why the hearing, scheduled in less than two weeks, could not move forward as scheduled.

The Father did not retain alternate counsel before the December 1, 2011 hearing. The Father's standby counsel appeared at the hearing. Standby counsel's only participation in the hearing was to ask what her role was to be at the hearing. The Family Court explained:

> [Standby counsel] is not taking any direct participation in this proceeding. She is not obligated to present evidence on behalf of [the Father], nor to cross examine any witness proffered by—that is offered by the Petitioner. She is here if [the Father] has any questions, procedural questions that he needs—wants advice on procedurally or questions about the law in an area, then he may confer with [standby counsel] to offer that purpose.

The Father has a fourth grade education. The Father's only participation in the hearing was to cross examine one witness. That cross-examination consisted of two questions. The Father did not give an opening statement, present testimony on his behalf, call witnesses, present any physical evidence, object to the admission of any evidence, or give a closing argument.

Following the hearing, the Family Court terminated the Father's parental rights on the grounds of unintentional abandonment under title 13, section 1103(a)(2)(b) of the Delaware Code and on the grounds that the Father failed to plan for the Child's needs under title 13, section 1103(a)(5).

### Due Process Right to Counsel

The right to have counsel appointed at State expense in any proceeding is determined by the due process require-

ments of the United States Constitution [3] and the Delaware Constitution.[4] The term "due process of law" in the Federal Constitution is synonymous with the phrase "law of the land" as used in Article 1, Sections 7 and 9 of the Delaware Constitution.[5] The United States Supreme Court has determined that the due process requirement of the United States Constitution is a flexible concept that calls for such procedural and substantive protections as the situation demands.[6] Accordingly, the United States Supreme Court has held that the Due Process Clause of the United States Constitution is not a fixed concept but implicitly means "fundamental fairness" in the context of specific circumstances.[7]

■ In the Delaware Constitution, however, the phrase "law of the land" is connected conjunctively with the phrase "justice administered according to the very right of the cause." [8] Therefore, "although the flexible concept of due process is only implicit in the United States Constitution, the framers of Delaware's Constitution explicitly guaranteed fundamental fairness in the administration of justice for the citizens of Delaware, with regard to the specific context, in all causes of action." [9]

Consequently, in some circumstances, the textual differences between the United States Constitution and the Delaware Constitution have led to different interpretations of their respective due process provisions.[10]

■ Nevertheless, with regard to an indigent parent's right to have counsel appointed at State expense, this Court's construction of the Delaware Constitution's mandate for due process "according to the very right of the cause" [11] is consistent with the flexible standards of due process guaranteed by the United States Constitution. In a TPR proceeding, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that trial courts determine whether or not to appoint counsel on a case-by-case basis.[12] In *In re Carolyn S.S.*,[13] this Court held that, in a termination proceeding, a parent's due process right to the appointment of counsel guaranteed by the Delaware Constitution is also decided on a case-by-case-basis.[14] This "case-by-case" analysis, under both the United States and Delaware Constitutions, requires an examination of the factors set forth in *Mathews v. Eldrige*,[15] which are:

3.  U.S. Const. amend. XIV, § 1.

4.  Del. Const. art. I, §§ 7 and 9.

5.  *Gannon v. State*, 704 A.2d 272, 278 (Del. 1998); *Black v. Div. of Child Support Enforcement*, 686 A.2d 164, 168 (Del.1996).

6.  *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 788, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)).

7.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. at 31, 101 S.Ct. 2153.

8.  Del. Const. art. I, § 9.

9.  *Watson v. Div. of Family Servs.*, 813 A.2d 1101, 1107 (Del.2002).

10.  *See, e.g., Lolly v. State*, 611 A.2d 956, 959–60 (Del.1992); *Hammond v. State*, 569 A.2d 81, 87 (Del.1989); *Deberry v. State*, 457 A.2d 744, 751–52 (Del.1983).

11.  Del. Const. art. I, § 9.

12.  *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

13.  *In re Carolyn S.S.*, 498 A.2d 1095 (Del. 1984).

14.  *Id.* at 1098; *see also Watson v. Div. of Family Servs.*, 813 A.2d 1101, 1108 (Del. 2002).

15.  *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

(1) the private interest that will be affected by the official action; (2) the risk that there will be an erroneous deprivation of the interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government interest involved, including the added fiscal and administrative burdens that addition or substitute procedure would require.[16]

Applying the *Eldridge* factors to the facts of this case, the Family Court determined that the indigent Father had a due process right to appointed counsel.[17]

In the context of this termination proceeding, our due process analysis is the same under both the United States and Delaware Constitutions, and provides an independent, alternative basis for our holding.[18] Since a determination had already been made by the Family Court that the indigent Father had a due process right to representation by a court-appointed attorney, we directed the parties to submit supplemental memoranda addressing the following question: should a motion to withdraw by counsel be subject to the same searching inquiry that is required when a court-appointed attorney moves to withdraw in a criminal case? More specifically, we asked whether the Family Court should consider appointing another attorney for the indigent parent, make a record of why the indigent parent may have forfeited the right to appointed counsel, and

advise the indigent parent of the hazards of self representation so that he or she can consider either waiving the right to counsel or reconciling with the original court-appointed attorney.

■■■ This Court has recognized that there are differences between criminal and TPR proceedings. Since TPR proceedings are civil in nature, they only must be "fundamentally fair."[19] For example, in a TPR proceeding, the burden of proof is only "clear and convincing evidence," as opposed to the heightened "beyond a reasonable doubt" standard that applies in a criminal trial.[20]

Similarly, this Court has recognized that "a termination of parental rights proceeding does not require the level of due process mandated in a criminal proceeding."[21] Nevertheless, in *In re Heller*,[22] this Court held that a parent has a due process right to be heard and to participate meaningfully in the termination proceeding.[23] This Court has also recognized that where fundamental rights are at stake, mechanisms must be employed to ensure procedural due process.[24] On a case-by-case basis, the Family Court properly and routinely finds that due process requires the appointment of counsel to represent parents who appear in a termination proceeding, request legal representation, and demonstrate indigency.

16. *Waters v. Div. of Family Servs.*, 903 A.2d 720, 725 (Del.2006).

17. *See also* Fam. Ct. Civ. R. 207.

18. *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

19. *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 443 (Del.2010) (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

20. *Id.*

21. *Wilson v. Div. of Family Servs.*, 988 A.2d at 443 (quoting *Farley v. Dep't of Servs. for Children, Youth & Their Families*, 765 A.2d 951, 2000 WL 1862231, at *1 (Del. Dec. 15, 2000) (table)).

22. *In re Heller*, 669 A.2d 25 (Del.1995).

23. *Id.* at 32.

24. *See Orville v. Div. of Family Servs.*, 759 A.2d 595, 598 (Del.2000).

### Due Process Waiver Procedures

After a case-by-case determination is made that an indigent parent has a due process right to the appointment of counsel, we hold that that parent is entitled to the same procedural safeguards that are afforded by the Sixth Amendment to defendants in a criminal proceeding. Although the Sixth Amendment right to counsel and the TPR due process right to counsel have different constitutional underpinnings, they are both entitled to the same protections. Accordingly, the procedures for the waiver or forfeiture of the right to appointed counsel in a criminal case provide persuasive authority in addressing an indigent parent's waiver or forfeiture of the right to counsel in a TPR proceeding.[25] In the criminal context, those waiver procedures were addressed by this Court in *Briscoe v. State*,[26] which relied upon *United States v. Welty*,[27] and the forfeiture procedures were addressed by this Court in *Bultron v. State*.[28]

In a termination proceeding, when an indigent parent requests the appointment of new counsel, or, in the alternative, seeks to represent himself or herself, the Family Court must engage in two separate lines of inquiry.[29] First, the Family Court must decide if the parent's reasons for requesting substitute counsel constitute good cause to justify the appointment of new counsel. To justify a substitution of counsel, the parent must show good cause, *e.g.*, a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with the attorney.[30] Mere dissatisfaction with "counsel does not, by itself, justify the appointment of different counsel." [31]

If the Family Court determines that the parent is not entitled to the appointment of new counsel, the parent must then decide whether to continue with the existing counsel or proceed *pro se*.[32] This latter choice gives rise to the Family Court's second line of inquiry. Since the decision to proceed *pro se* involves a waiver of the parent's due process right to counsel that led to the appointment of the original attorney, the Family Court must ensure that any decision by the parent to proceed *pro se* is made knowingly and intelligently.[33]

The Family Court can ascertain that an indigent parent's waiver of counsel is knowing and intelligent only after a comprehensive examination that involves advising the parent about the dangers of self-representation,[34] for example:

(1) that the parent will have to conduct his or her case in accordance with the rules of evidence and civil procedure, rules with which he or she may not be familiar;

(2) that the parent may be hampered in presenting his or her best case by a lack of knowledge of the law;

(3) that the effectiveness of his or her presentation may be diminished by

---

25.  See *Briscoe v. State*, 606 A.2d 103, 107–08 (Del.1992); *see also United States v. Welty*, 674 F.2d 185, 188–89 (3d Cir.1982).

26.  *Briscoe v. State*, 606 A.2d 103 (Del.1992).

27.  *United States v. Welty*, 674 F.2d 185 (3d Cir.1982).

28.  *Bultron v. State*, 897 A.2d 758 (Del.2006).

29.  *United States v. Welty*, 674 F.2d at 187.

30.  *Id.* at 188.

31.  *Bultron v. State*, 897 A.2d at 763.

32.  *Id.*

33.  See *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

34.  *Briscoe v. State*, 606 A.2d at 108.

the dual role as attorney and respondent;

(4) limited knowledge of the statutory grounds for the petition to terminate his or her parental rights; and

(5) any other facts essential to a broad understanding of the termination proceeding.[35]

In this case, none of these matters were discussed with the Father. Instead, after permitting the Father's court-appointed attorney to withdraw, the Family Court told the indigent, incarcerated Father that, if he did not retain new counsel, he must proceed *pro se.*

### Standby Counsel

▮ The Mother argues that the Father was not deprived of his due process right to court-appointed counsel because the Father proceeded *pro se* with the assistance of appointed standby counsel. In a criminal proceeding, when a trial court concludes the inquiries set forth in *Briscoe,*[36] it may decide to permit the defendant to proceed *pro se* and, in an exercise of discretion, may appoint standby counsel. A defendant's Sixth Amendment right to proceed *pro se* is not violated when a trial court appoints standby counsel, even over the defendant's objection, "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of

the defendant's self-representation is necessary." [37]

▮ Even so, the appointment of standby counsel in a criminal proceeding, for a defendant who proceeds *pro se,* is not an acceptable alternative to a knowing and intelligent waiver of the Sixth Amendment right to counsel.[38] The same rationale applies in examining the waiver of a parent's due process right to representation in a termination proceeding. Accordingly, we hold that the appointment of standby counsel for the Father was not an acceptable alternative to a valid waiver of the due process right to appointed counsel.

### Conclusion

▮ In a TPR proceeding, if the Family Court determines that the parent has a due process right to the assistance of appointed counsel, unless the parent knowingly waives or forfeits the right to such assistance, the requirements of due process are not satisfied under either the Fourteenth Amendment of the United States Constitution or Article 1, Section 9 of the Delaware Constitution.[39] In this case, the record unambiguously establishes that the Father did not knowingly and intelligently waive or forfeit his due process right to counsel. Therefore, the judgment of the Family Court must be reversed. This matter is remanded for a new TPR hearing at which the Father is entitled to be represented by a court-ap-

---

**35.** *Compare Briscoe v. State,* 606 A.2d at 108 with *United States v. Welty,* 674 F.2d at 188.

**36.** *Briscoe v. State,* 606 A.2d at 108.

**37.** *Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See also Pennell v. State,* 604 A.2d 1368, 1371 (Del.1992) (directing standby counsel to be present at oral argument before this Court).

**38.** *Johnson v. Zerbst,* 304 U.S. 458, 467–68, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United*

*States v. Welty,* 674 F.2d 185, 191 (3d Cir. 1982); *United States ex rel. Axselle v. Redman,* 624 F.Supp. 332, 338 (D.Del.1985).

**39.** *Watson v. Div. of Family Servs.,* 813 A.2d 1101, 1111–12 (Del.2002); *Brown v. Div. of Family Servs.,* 803 A.2d 948, 959–60 (Del. 2002); *Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (requiring a "plain statement" of independent State grounds).

pointed attorney, unless a record is made that establishes that the Father validly waived or forfeited that due process right.