IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| THEA L. DAYLONG,[1] | § No. 511, 2019 |
| | § |
| Respondent Below, | § Court Below—Family Court |
| Appellant, | § of the State of Delaware |
| | § |
| v. | § File No. 19-01-1TK |
| | § |
| ANDREW S. JULIOUS, JR. and | § Petition No. 19-00496 |
| CALI JULIOUS | § |
| | § |
| Petitioners Below, | § |
| Appellees. | § |

Submitted: March 17, 2020
Decided: May 27, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellees' response, and the Family Court record, it appears to the Court that:

(1) The respondent-appellant ("Mother") filed this appeal from the Family Court's order dated November 12, 2019, terminating her parental rights in her minor child, who is now five years old. The order also terminated the parental rights of the Child's biological father ("Father"); Father has not appealed.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1. Mother's counsel states that he is unable to present a meritorious argument in support of the appeal. Mother has submitted several points for this Court's consideration. For the reasons that follow, we affirm the judgment of the Family Court.

(3) The record reflects that shortly after the Child's birth in January 2015, the Delaware Division of Family Services ("DFS") sought and obtained custody of the Child, based on concerns about statements that Mother made to hospital staff regarding her ability to care for the Child and DFS's observations of Mother's housing situation. Father was incarcerated and is a registered sex offender because of convictions for sex offenses, including sexual abuse of a minor. DFS placed the Child in foster care with the petitioners-appellees (the "Appellees"). She remained in foster care with the Appellees for more than a year.

(4) In September 2015, Mother's sister ("Maternal Aunt") filed a petition for guardianship of the Child. On February 3, 2016, the Family Court awarded guardianship of the Child to Maternal Aunt. With respect to dependency, the Family Court found that Mother consented to the guardianship and that she lacked suitable housing, failed to continue with mental health treatment, and could not financially support the Child. Although the Child was thriving in the Appellees' foster home

2

and was bonded with them, the court determined that, on balance, it was in the Child's best interests to be placed with a biological family member.

(5) After the Family Court awarded guardianship to Maternal Aunt, Maternal Aunt allowed the Appellees a single, short visit with the Child and then permitted no other contact. In August 2016, Appellees filed a petition for visitation. The Family Court did not receive any response to the petition and ordered that the Appellees would have visitation with the Child one weekend per month. Maternal Aunt did not comply with the visitation order, and the Appellees moved for contempt. At a contempt hearing, Maternal Aunt, with Mother's support, confirmed her willful failure to comply with the visitation order.

(6) Following the contempt proceedings, the Appellees had visitation with the Child for one weekend each month from December 2016 through September 2017. In October 2017, however, Maternal Aunt did not meet the Appellees at the exchange site for the visit. After an investigation, the Appellees learned that Maternal Aunt had moved the Child to West Virginia. In January 2018, the Appellees filed an emergency petition for guardianship of the Child. Mother and Maternal Aunt did not appear at the hearing on January 22, 2018, and the court awarded temporary guardianship of the Child to Appellees. The Appellees retrieved the Child from West Virginia and returned her to Delaware.

3

(7)     In July 2018, the Family Court held a full hearing on the merits of the Appellees' petition for guardianship, and in August 2018, the court terminated Maternal Aunt's guardianship and awarded guardianship of the Child to the Appellees.  The court determined that the facts on which the court had previously based its finding of dependency had not changed in a meaningful way.  In fact, Mother had moved to Maryland and then West Virginia, where she lived with relatives.  The Child had never lived with her, and the relocation had reduced her ability to have meaningful interaction with the Child.  The Child had a strong and positive relationship with the Appellees and had adjusted well to their household and community activities.  Mother, Father, nor Maternal Aunt appealed.

(8)     On January 7, 2019, the Appellees filed a petition for termination of parental rights ("TPR") and a petition for adoption of the Child.  At the Family Court's direction, A Better Chance for Our Children completed social studies for both petitions.  Mother appeared at the TPR hearing on October 25, 2019, represented by court-appointed counsel; Father, who was incarcerated, did not appear.  The witnesses at the hearing were Mother, the Appellees, the child and family specialist who completed the social studies, Maternal Aunt, and a friend of Mother's.

(9)     The evidence presented at the hearing reflected that in May 2018— several months after the Family Court had awarded guardianship to the Appellees

4

and the Child had returned to Delaware—Mother moved from Maryland to Tornado, West Virginia to live with Maternal Aunt. Five months later, she relocated to Charleston, West Virginia to live with another sister.

(10) The order awarding guardianship to the Appellees allowed visitation between Mother and the Child at the Appellees' discretion. After she moved to West Virginia, Mother had contact with the Child via video calls, but the Appellees limited contact after Mother began cursing, yelling, and making inappropriate comments during the video calls. Mother never filed a petition for visitation, although she testified that a Family Court clerk told her that she was not permitted to file a petition for visitation after the Appellees filed their TPR petition.

(11) Mother also testified at the hearing that on the following day she would be moving to Gulfport, Mississippi, where she would stay with a friend and the friend's family and hoped to secure employment at a Wal-Mart store. She further testified that she had married Father, a convicted sex offender, in December 2018, and that she would be happy for him to have contact with young children, including the Child. Mother had not paid any child support for the Child's care.

(12) The testimony of the Appellees and the child and family specialist who performed the social studies indicated that the Child was well adjusted to the Appellees' home and had a good relationship with the Appellees; the members of their family, including their young daughters; and the members of their community.

The Child was active in karate and the Appellees' church. At the hearing, Mother's counsel took the position that "we have nothing negative to say about" the environment and care the Appellees had provided for the Child and asked that the guardianship be continued, rather than terminating Mother's parental rights.

(13) On appeal, Mother has presented a number of points for the Court's consideration, which may be fairly summarized as follows: (i) the Family Court erroneously prevented her from presenting evidence at the hearing; (ii) the Appellees interfered with Mother's contact with the Child; (iii) the Family Court erroneously denied her motion requesting that the court interview the Child regarding her wishes and erroneously considered the Child's out-of-court statement to the child and family specialist regarding her desire to live with the Appellees; (iv) the disparity between Mother's and the Appellees' financial circumstances is not a basis for terminating Mother's parental rights; (v) she told her attorney that she is filing for divorce from Father, but that information was not provided to the court; and (vi) the fact that her sister's children had been taken into foster care should not have affected the outcome of Mother's TPR proceeding.

(14) This Court's review of the Family Court's decision to terminate parental rights entails consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[2] To the extent that the Family Court's

---

[2] *Wilson v. Div. of Fam. Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

6

rulings of law are implicated, our review is *de novo*.[3] The Delaware statute governing the termination of parental rights requires a two-step analysis.[4] First, there must be proof of a statutory basis for termination.[5] Second, there must be a determination that termination of parental rights is in the best interests of the child.[6] Both requirements must be established by clear and convincing evidence.[7]

(15)  In its November 12, 2019 decision, the Family Court concluded that the Appellees had proven by clear and convincing evidence that Mother had failed to adequately plan for the Child's physical needs or mental and emotional health and development.[8] Specifically, the Family Court found that Mother had opted to move to West Virginia and planned to move to Mississippi; there was no evidence in the record that Mother had ever obtained adequate, safe housing for herself and the Child; that Mother was completely out of contact with the Child from January 2018 to April 2018 and from June 2018 to September 9, 2018; Mother had used her contact since that time not "as opportunities to nurture and encourage the child, but to

---

[3] *Id.*

[4] *See* 13 *Del. C.* § 1103 (listing grounds for termination of parental rights); *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[5] *Shepherd*, 752 A.2d at 537.

[6] *Id.*

[7] *Powell v. Dep't of Servs. for Children, Youth, & Their Families*, 963 A.2d 724, 731 (Del. 2008).

[8] *See* 13 *Del. C.* § 1103(a)(5)b (permitting termination of parental rights based on the parent's failure "to plan adequately for the child's physical needs or mental and emotional health and development" if, in the case of a child in the home of a guardian, the child has been in the guardian's home for at least one year and the court "finds the respondent is incapable of discharging parental responsibilities, and there appears to be little likelihood that the respondent will be able to discharge such parental responsibilities in the near future").

express anger over the circumstances and to entice the child to Mother's home"; Mother had not provided any support for the Child; and there was no suggestion in the record that Mother would be able to discharge parental responsibilities in the future. The Family Court also considered the statutory best interest factors and concluded that it was in the Child's best interests that Mother's parental rights be terminated.

(16) We have carefully reviewed the parties' submissions as well as the record below, including the transcript of the TPR hearing. We conclude that the evidence supports the Family Court's termination of Mother's parental rights on the statutory ground of failure to plan and on the ground that the termination is in the best interests of the Child. We also conclude that Mother's arguments do not support reversal.

(17) First, Mother argues, without specificity, that the Family Court erroneously prevented her from presenting evidence at the hearing. The transcript of the hearing does not support Mother's argument. To the extent that the Family Court limited the use of certain evidence of Mother's employment based on her failure to produce the evidence in discovery, Mother was represented by counsel at the TPR hearing and testified regarding her employment and earnings history. Mother does not contend that the court excluded evidence that would have demonstrated significantly different information than what was presented at the

8

hearing.  In any event, the rules of evidence and civil procedure apply in TPR proceedings,[9] and we have not identified any basis to conclude that the Family Court erred in its evidentiary rulings.

(18)  Second, Mother argues that the Appellees interfered with her contact with the Child.  The record reflects that Mother chose to move to West Virginia, which limited her ability to have in-person contact with the Child, and that the Appellees allowed video-call contact when Mother requested it and the parties could agree on scheduling, until Mother used the contact to engage in inappropriate conversations with the Child.  Moreover, even crediting Mother's testimony that a Family Court clerk told her that she could not file a petition for visitation after the TPR petition was filed, Mother did not seek any contact with the Child during approximately six months in 2018, nor did she request a visitation order during the one-year period between when the Child was placed in a guardianship with the Appellees and when the Appellees filed the TPR petition.

(19)  Third, Mother contends that the Family Court erroneously denied her motion requesting that the court interview the Child regarding her wishes and erroneously considered the Child's out-of-court statement to the child and family specialist regarding her desire to live with the Appellees.  Given the very young age

---

[9] *See generally Moore v. Hall*, 62 A.3d 1203, 1210 (Del. 2013) (stating that parents who desire to represent themselves in a TPR proceeding must understand that they will have to comply with the rules of evidence and civil procedure).

9

of the Child, we find no abuse of discretion in the Family Court's decision not to interview her regarding her wishes.[10] With respect to the consideration of the Child's statement to the child and family specialist, Mother was represented by counsel and did not present this issue to the Family Court in the first instance; we therefore will not consider it on appeal.[11]

(20) Fourth, Mother argues that the disparity between Mother's and the Appellees' financial circumstances is not a basis for terminating her parental rights. This argument misstates the Family Court's conclusions. Parental responsibilities include providing for a child's "physical needs" and her "mental and emotional health and development."[12] The Family Court found that Mother had failed to plan adequately for those needs because she moved away from the Child, failed to obtain adequate housing, did not provide support for the Child, failed to maintain contact with the Child for significant periods of time, and did not use the contact she did have in a positive manner. We do not find any reversible error in the court's conclusions.

---

[10] *See Frost v. Div. of Family Servs.*, 2013 WL 989363, at *5 (Del. Mar. 12, 2013) (declining to find that the Family Court did not properly exercise its discretion when declining to interview children, based on reservations of the oldest child's therapist and the "very young age" of the three other children).

[11] DEL. SUPR. CT. R. 8.

[12] 13 *Del. C.* § 1103(a)(5).

(21) Fifth, Mother contends that she told her attorney that she planned to file for divorce from Father, but that her attorney did not provide that information to the court. We see no grounds for reversal on the basis of her post-hearing, purported intent to file for divorce.

(22) Finally, Mother argues that the fact that her sister's children had been taken into foster care should not have affected the outcome of Mother's TPR proceeding. Mother's counsel did not raise any objection when the Appellees' counsel elicited testimony from Mother regarding the removal of the sister's children by West Virginia child welfare authorities while Mother was living with the sister and her family.[13] Moreover, the Family Court's decision does not reference those circumstances or indicate that they were a factor in the court's decision. In the absence of any error or abuse of discretion, we conclude that the Family Court's judgment must be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[13] DEL. SUPR. CT. R. 8.

11