

DA 13-0382

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 13

IN THE MATTER OF:

L.V-B.,

    A Youth in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Nineteenth Judicial District, In and For the County of Lincoln, Cause No. DN 12-4 Honorable James B. Wheelis, Presiding Judge |

COUNSEL OF RECORD:

    For Appellant:

        Carolynn M. Fagan, Fagan Law Office, P.C.; Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General; Helena, Montana

        Emily Von Jentzen, Assistant Attorney General, Child Protection Unit; Kalispell, Montana

        Bernard G. Cassidy, Lincoln County Attorney; Libby, Montana

Submitted on Briefs: December 3, 2013
Decided: January 21, 2014

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    F.V. ("Mother") appeals from an order of the Nineteenth Judicial District Court, Lincoln County, terminating her parental rights to her daughter, L.V.-B. We affirm. We restate the issues on appeal as follows:

¶2    1. Whether Mother articulated a substantive due process claim which required that the State's petition to terminate be dismissed.

¶3    2. Whether § 41-3-424, MCA, and the placement of L.V.-B. with Father required that the State's petition to terminate be dismissed.

¶4    3. Whether the State's petition to terminate was filed prematurely.

## BACKGROUND

¶5    In October 2011, Mother gave birth to L.V.-B. In a prior proceeding in 2010, the Department of Public Health and Human Services ("Department") removed a different child from Mother's care due to her drug use, homelessness, and for leaving the child with an inappropriate caregiver. Mother did not comply with the treatment plan that the Department provided to enable her to parent her first child safely. The State ultimately did not petition to terminate Mother's rights to the first child because it was able to place the child in the care of that child's father.

¶6    In February 2012, the Department removed L.V.-B. from Mother's care based on reports that Mother was using drugs, homeless, and had left L.V.-B. with inappropriate caregivers. The Department placed L.V.-B. with her maternal aunt, and established a voluntary services agreement with Mother that addressed the issues leading to L.V.-B.'s removal. Mother did not comply with the voluntary services agreement, and the State

2

filed a petition for emergency protective services and temporary investigative authority in March 2012. The District Court granted temporary investigative authority to the Department upon stipulation of the parties in April 2012. In May 2012, paternity of L.V.-B. was established and the Department provided L.V.-B.'s father ("Father") with a treatment plan. The parties do not dispute that Father successfully completed his treatment plan. L.V.-B. remained with her maternal aunt until placed with Father in April of 2013.

¶7 In July 2012, the District Court adjudicated L.V.-B. a youth in need of care. The Department provided Mother with a treatment plan requiring her to obtain a drug evaluation and follow through with treatment recommendations, participate with Family Concepts to improve her parenting skills, submit to random urinalysis testing, maintain an adequate home, avoid involvement with criminal activity, attend visitations with L.V.-B., obtain a job, and maintain weekly contact with the Department. Mother failed to comply with the terms of the treatment plan, and in January 2013 the State filed a petition to terminate Mother's parental rights. Shortly before Mother's termination hearing, the Department placed L.V.-B. with Father.

¶8 On April 18, 2013, Mother filed a motion to dismiss the State's termination petition, arguing that L.V-B.'s placement with Father diminished the State's interest in L.V.-B., and that Mother's fundamental constitutional right to remain L.V.-B.'s parent outweighed the State's interest in termination. Mother additionally argued that the termination petition was filed prematurely. Mother was not present at the termination hearing on April 19, 2013. Her counsel explained that Mother had difficulties with

3

transportation, but he also stated that he had offered to give Mother a ride to the hearing. Four witnesses testified on behalf of the Department: Denise Killingsworth, clinical supervisor and data coordinator for Flathead Valley Chemical Dependency Center ("Center"); Kayla White, family support worker for Family Concepts; Lisa Byington, Child Protection Specialist for the Department; and Donna Parrish, Child Protection Specialist for the Department.

¶9 Killingsworth testified that although Mother went to the Center to schedule an appointment for a drug evaluation, she never attended the evaluation or called back to reschedule. The Center attempted to contact Mother at the phone number she provided, but was unable to reach her. Therefore, Mother never received any drug treatment. White testified that Mother tested positive for drugs and/or alcohol on nine out of the ten urinalysis tests that she administered to Mother. Mother was either late or absent to many of her visitations with L.V.-B., despite White's repeated offers to provide Mother with transportation to the visits. White also repeatedly offered to transport Mother to any other appointments or meetings related to her treatment plan, but Mother never accepted these offers. After 30 days had passed without any contact from Mother, the Department, based upon its policy, requested that Family Concepts terminate its services to Mother.

¶10 Byington was Mother's caseworker in the Department's case with Mother's previous child. Byington testified that the conduct and conditions at issue in the prior case included Mother's drug use, her inability to parent, and her homelessness. Byington attempted to work with Mother by offering a drug evaluation, treatment, housing, and assistance in establishing a safe and stable home environment, but Mother refused the

4

voluntary services. Finally, Parrish, Mother's caseworker in the present case, testified that she provided Mother with a treatment plan, and offered Mother transportation and referrals. Parrish noted that Mother had not complied with any of the requirements in her treatment plan, and that Mother had been incarcerated for drug-related charges on three separate occasions since initiation of these proceedings. She acknowledged that in Mother's prior case, the Department placed that child with that child's father, and did not terminate Mother's rights. Parrish then explained the Department's decision to proceed to terminate in this case, stating that she had some concerns about L.V.-B.'s current placement with Father, and at the time of the hearing the Department was continuing to monitor Father to determine whether he would be an appropriate placement. She testified that proceeding with termination would: ensure that L.V-B. would not end up back in Mother's care; help the Department protect any future children Mother might have; and allow L.V.-B. to be available for adoption by another mother.

¶11 The District Court terminated Mother's parental rights pursuant to § 41-3-609, MCA, and denied Mother's motion to dismiss the termination petition, concluding that "because of the Mother's inability or unwillingness to resolve the issues which caused the youth to be adjudicated a youth in need of care, the conduct and condition of the Mother rendering her unfit is unlikely to change within a reasonable time." The District Court also found that L.V.-B.'s best interests would be served by termination. Mother now appeals the District Court's denial of her motion to dismiss the State's termination petition.

**STANDARD OF REVIEW**

¶12     We review de novo a district court's decision on a motion to dismiss. *Hartsoe v. Tucker*, 2013 MT 256, ¶ 6, 371 Mont. 539, 309 P.3d 39. Whether a person has been denied due process is a question of constitutional law, and we exercise plenary review. *In re T.S.B.*, 2008 MT 23, ¶ 20, 341 Mont. 204, 117 P.3d 429.

**DISCUSSION**

¶13     Mother argues that the District Court's denial of her motion to dismiss violated her constitutional right to due process. Additionally, Mother argues that the District Court erred in terminating her parental rights because § 41-3-424, MCA, required the dismissal of the State's termination petition, and because the State prematurely filed the termination petition. For the reasons discussed below, we disagree.

¶14     ***Issue One: Whether Mother articulated a substantive due process claim which required that the State's petition to terminate be dismissed.***

¶15     The right to parent one's children is a constitutionally protected fundamental liberty interest. U.S. Const. amend. XIV; *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2061 (2000) (plurality); *In re A.S.*, 2004 MT 62, ¶ 12, 320 Mont. 268, 87 P.3d 408; *In re D.B.J.*, 2012 MT 220, ¶ 28, 366 Mont. 320, 286 P.3d 1201. Consequently, the State must provide fundamentally fair procedures at all stages in the proceedings to terminate parental rights. *In re Declaring A.N.W.*, 2006 MT 42, ¶ 34, 331 Mont. 208, 130 P.3d 619. Proceedings to terminate parental rights must meet the due process requirements guaranteed by the Montana and United States Constitutions, which hold that a parent must not be placed at an unfair disadvantage. *A.N.W.*, ¶ 34. The right to parent,

6

however, must yield to the State's responsibility to protect and promote the welfare of the child when clear and convincing evidence is presented that a parent is unfit. *In re M.A.L.*, 2006 MT 299, ¶ 26, 334 Mont. 436, 148 P.3d 606. "When considering the criteria for termination of parental rights, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional needs." *In re F.M.*, 2002 MT 180, ¶ 22, 311 Mont. 35, 53 P.3d 368.

¶16 A specific framework is used to analyze procedural due process allegations in the context of termination of parental rights. In raising a procedural due process claim, a parent's interests are balanced against both the State's parens patriae interest in preserving and promoting the welfare of the child, and the State's fiscal and administrative interest in reducing the cost and burden of such proceedings. *Santosky v. Kramer*, 455 U.S. 745, 766, 102 S. Ct. 1388, 1401 (1982).

¶17 Mother does not allege that she received improper notice of the termination proceedings, or that she was not afforded the opportunity to be heard. Accordingly, Mother does not present a procedural due process claim. Rather, Mother purports to assert that the District Court violated her substantive due process rights when it found that L.V.-B's best interests would be served by terminating Mother's parental rights, even though L.V.-B. had been placed with Father. Although Mother attempts to raise a substantive due process claim, she then conducts her analysis using the framework (set forth above) that is clearly established to address procedural due process claims in termination of parental rights cases. As such, Mother's balancing of her right to parent against the State's dual interests (parens patriae and its fiscal and administrative interest)

7

is not the proper framework for evaluating a substantive due process claim. Additionally, Mother does not provide the appropriate test for evaluating alleged substantive due process violations in termination cases, and misstates the standard of scrutiny afforded to such claims.[1] We decline to address Mother's purported substantive due process claim when it has not been adequately articulated, and the appropriate framework under which to analyze such a claim has not been set forth.

¶18 ***Issue Two: Whether § 41-3-424, MCA, and the placement of L.V.-B with Father required that the State's petition to terminate be dismissed.***

¶19 Mother argues that the State's termination petition against Mother should have been dismissed in accordance with § 41-3-424, MCA, because L.V.-B. was placed with Father at the time of the hearing. Section 41-3-424, MCA, provides that an abuse and neglect petition can be dismissed only if all of the following three conditions are met: 1) a child placed in foster care is reunited with his or her parents and returned home; 2) the child remains in the home for a minimum of six months with no additional confirmed reports of child abuse or neglect; and 3) the Department determines that the issues that led to intervention have been resolved and that no reason exists for further Department intervention or monitoring. Mother claims that L.V.-B.'s placement with Father satisfies the first condition of § 41-3-424, MCA, and therefore the termination petition should

---

[1] Mother claims that *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972), holds that all fundamental liberty interests, including the right to parent, are subject to strict scrutiny. This is incorrect. *Stanley*'s main holding is that as a matter of equal protection and procedural due process, an unwed father is entitled to a hearing on his parental fitness before his parental rights are terminated. Despite its classification as a fundamental liberty interest, neither the U.S. Supreme Court nor the Montana Supreme Court has ever specified the standard applicable to a substantive due process claim arising from a termination case. In any event, *Stanley* does not apply to Mother's case in which she raises a substantive due process claim, as it only addresses constitutional claims based on the grounds of equal protection and procedural due process.

have been dismissed.  However, the first condition is not satisfied, as L.V.-B. has not been reunited with nor returned home to Mother.  Section 41-3-424, MCA, applies to situations in which an abuse and neglect petition filed against an offending parent (a parent who has had a child removed from the home because of his or her conduct or condition) is dismissed because the offending parent satisfies the three conditions.  In this case, the fact that L.V.-B. has been placed with Father (a nonoffending parent) has no bearing on Mother (an offending parent) or her parental rights.  The statute is clearly not meant to benefit a noncompliant, offending parent, for the compliance of a nonoffending parent.  As such, Mother's argument that the termination was improper due to L.V.-B.'s placement with Father necessarily fails.

¶20 ***Issue Three: Whether the State's petition to terminate was filed prematurely.***

¶21 Mother argues that the termination of her parental rights was improper because the State filed the termination petition prematurely, and that "a little extra time would not have harmed L.V.-B. or the State."  She claims that § 41-3-604, MCA, establishes a statutory waiting period that must pass before the State can file a termination petition.  Mother concedes, however, that there is no statute which requires the State to wait a particular period of time before filing its termination petition.

¶22 Statutes providing for the termination of parental rights establish the following: 1) the circumstances under which a petition *must* be filed; and 2) the requirements that must be met before parental rights are terminated.  First, § 41-3-604, MCA, outlines the conditions under which the State must petition to terminate a parent's rights, stating that "[i]f a child has been in foster care under the physical custody of the state for 15 months

9

of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." Mother argues the State's termination petition was premature because L.V.-B. was no longer in foster care at the time of the termination hearing, and had not spent 15 out of 22 months in foster care, pursuant to § 41-3-604, MCA. However, this statute only pertains to a situation in which the State is under a statutory obligation to proceed with termination; it does not require the State to wait a certain amount of time before filing. No statute imposes such a waiting period, and in fact, as the State correctly points out, under some circumstances a petition for termination may be the initial document that the State files. Section 41-3-422(1)(a)(v), MCA; *see e.g. In re T.S.B.*, 2008 MT 23, ¶ 27, 341 Mont. 204, 177 P.3d 429.

¶23 Second, the State may proceed with termination when a child who has been adjudicated a youth in need of care has a parent who has been unsuccessful with an appropriate treatment plan, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Determining whether a parent's conduct is likely to change within a reasonable amount of time "requires a predictive assessment based upon past and present conduct of the parent" in question. *In re C.M.C.*, 2009 MT 153, ¶ 25, 350 Mont. 391, 208 P.3d 809. A parent's past behavior is considered in determining fitness to parent in the future. *In re A.J.E.*, 2006 MT 41, ¶ 27, 331 Mont. 198, 130 P.3d 612.

¶24 Despite Mother's argument that "there was simply no reason" to terminate Mother's rights, numerous facts in the record indicate that Mother's conduct or condition was unlikely to change in a reasonable time. At the termination hearing, Mother's

caseworker from her first child testified that Mother's drug use, inability to parent, and homelessness led to the removal of her first child. In her prior case, the Department offered Mother a treatment plan that included a drug evaluation and treatment, housing, and assistance in establishing a safe and stable home environment, but Mother refused these services. Mother's caseworker in the present case testified that, similar to the proceedings in 2010, the Department provided Mother with a treatment plan that addressed the same issues identified in the prior treatment plan. Mother failed to comply with both treatment plans. Presently, Mother has not attended a drug evaluation as required, nor has she received any type of drug treatment. Mother's family support worker from Family Concepts testified that Mother failed nine out of ten urinalysis tests. Her family support worker repeatedly offered to provide Mother with transportation, yet Mother missed many scheduled visits with L.V.-B. Consequently, Mother went long periods of time without contacting the Department, which caused her to go long periods of time without seeing L.V-B. Mother also obtained multiple criminal drug convictions during the time that the treatment plan was in place, and did not show up to the termination hearing.

¶25 All of the above facts detailing Mother's past behavior support the District Court's conclusion that the State met its burden in showing that Mother's conduct or condition was unlikely to change within a reasonable time. *See In re J.M.J.*, 1999 MT 277, ¶¶ 26-27, 296 Mont. 510, 989 P.2d 840 (mother's failure to meet any of the goals established by her court-approved treatment plans supports a finding that her conduct or condition was unlikely to change with a reasonable time); *In re A.D.B.*, 2013 MT 167, ¶ 48, 370 Mont.

11

422, 305 P.3d 739 (mother's failure of 40 out of 42 drug tests supports conclusion that Mother's conduct was unlikely to change within a reasonable time); *In re M.A.W.*, 256 Mont. 296, 308-09, 846 P.2d 985, 992-93 (1993) (father's failure to maintain the required contact with his caseworker and with his children supports the finding that the conduct rendering him unfit was unlikely to change within a reasonable time); *In re A.S.*, 2006 MT 281, ¶ 50, 334 Mont. 280, 146 P.3d 778 (mother's continued drug use, criminal charges, and failure to maintain steady employment supports district court's finding that mother's conduct was unlikely to change within a reasonable time). Accordingly, we hold that the District Court did not err in denying Mother's motion to dismiss.

## CONCLUSION

¶26 For the foregoing reasons, we affirm. We hold Mother did not raise a cognizable constitutional claim, and the District Court did not err in denying Mother's motion to dismiss. Lastly, the provisions of § 41-3-424, MCA, and the placement of L.V.-B. with Father did not require the District Court to grant Mother's motion to dismiss.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT