FILED

December 2 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0101

DA 14-0101

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 322

IN THE MATTER OF THE ADOPTION OF:
A.W.S. and K.R.S., Minor Children,

J.N.S.,

       Petitioner and Respondent,

   v.

A.W.,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                 In and For the County of Lincoln, Cause Nos. DA 13-13 and DA 13-14
                 Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Scott Peterson, Robert Farris-Olsen, Morrison, Sherwood, Wilson & Deola,
          PLLP, Helena Montana

       For Appellee:

          Linda Osorio St. Peter, St. Peter Law Offices, P.C., Missoula, Montana

          Heather McDougall, Attorney at Law, Troy, Montana

                       Submitted on Briefs:  October 15, 2014
                                Decided:  December 2, 2014

Filed:

                                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     A.W. (Mother) appeals the Nineteenth Judicial District Court's order terminating her parental rights to her two minor children in a proceeding for adoption by the children's stepmother.  She raises two issues on appeal: whether the District Court erred when it did not appoint counsel to her for the involuntary termination proceeding, and whether the court's decision to terminate her parental rights was based on clear and convincing evidence.  Because we conclude that Mother has a constitutional right to counsel in this case, we do not reach the second issue.

¶2     We reverse and remand for appointment of counsel to Mother and a new hearing on the petition to terminate Mother's parental rights.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3     Mother and W.A.S. (Father) entered into a common law marriage in 2000 and divorced in 2007.  While married, they had two children: A.W.S. and K.R.S.  In 2008, Father married J.N.S. (Stepmother).  A.W.S. and K.R.S. reside with Father and Stepmother.

¶4     Mother had regular, unsupervised parenting time under the original parenting plan.  This changed after her arrest in 2009, when the District Court issued an amended parenting plan that restricted Mother to supervised visitations.  In her brief on appeal, Mother claims that she had difficulty scheduling supervised visits and that Father and Stepmother hindered her ability to visit the children.  Her last visit with her children was in August 2010.

2

¶5     On November 25, 2013, Stepmother filed petitions for adoption of A.W.S. and K.R.S. and sought an order terminating Mother's parental rights. Mother never filed a formal objection or response to the petitions. The District Court held a show cause hearing on the petitions for both children on January 13, 2014. Mother was present at the hearing, but not represented by an attorney. She did not object to any of the evidence Stepmother presented.

¶6     At the hearing, counsel for Stepmother called Mother as a witness. Stepmother's attorney asked Mother why she "never followed through on anything" after initially attempting to set up supervised visitation. Mother responded:

> I did not have the money to go through to get an attorney to go to Court. That is obviously why I am here by myself. . . . [Y]ou have to have money to get an attorney . . . to come into court to go through all of this.

¶7     Mother did not testify on her own behalf. In fact, apart from her testimony in the Stepmother's case-in-chief, Mother did not call any witnesses or present any other evidence at all.[1] She did, however, inform the court that she opposed the termination of her parental rights.

¶8     On January 16, 2014, approximately five weeks after Mother first received notice of the petitions, the District Court entered a decree of adoption in Stepmother's favor and terminated Mother's parental rights to both children. The District Court found that Mother had willfully abandoned her children, that she had not supported her children, and that it

---

[1] Mother claims on appeal that her probation officer would have testified for her, but that the officer was not available on the date of the hearing. She claims that she did not know to request a continuance.

was in the children's best interests to terminate her rights under § 42-2-608(1), MCA, and to award adoption to Stepmother.

¶9 Mother timely appealed.

## STANDARD OF REVIEW

¶10 This Court's review of constitutional issues is plenary. *Jaksha v. Butte-Silver Bow County*, 2009 MT 263, ¶ 13, 352 Mont. 46, 214 P.3d 1248; *In re L.V-B.*, 2014 MT 13, ¶ 12, 373 Mont. 344, 317 P.3d 191.

## DISCUSSION

¶11 The Montana Constitution guarantees that no person shall be denied the equal protection of the laws. Mont. Const. art. II, § 4. "'The Fourteenth Amendment to the United States Constitution and Article II, Section 4, of the Montana Constitution embody a fundamental principle of fairness: that the law must treat similarly-situated individuals in a similar manner.'" *Snetsinger v. Mont. Univ. Sys.*, 2004 MT 390, ¶ 15, 325 Mont. 148, 104 P.3d 445 (quoting *McDermott v. Montana Dept. of Corrections*, 2001 MT 134, ¶ 30, 305 Mont. 462, 29 P.3d 992). Montana's Equal Protection Clause "provides even more individual protection than the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution." *Snetsinger*, ¶ 15 (citing *Cottrill v. Cottrill Sodding Serv.*, 229 Mont. 40, 42, 744 P.2d 895, 897 (1987)).

¶12 "When analyzing an equal protection challenge, we 'must first identify the classes involved and determine whether they are similarly situated.'" *Snetsinger*, ¶ 16 (citing *Henry v. State Comp. Ins. Fund*, 1999 MT 126, ¶ 27, 294 Mont. 449, 982 P.2d 456). The two classes involved in this appeal are created by Montana's alternate statutory

frameworks for effecting the involuntary termination of parental rights: involuntary termination may be accomplished in connection with either an abuse and neglect petition under Title 41, MCA, or an adoption petition under Title 42, MCA, the Montana Adoption Act. Title 41, chapter 3, part 4, MCA, provides for the involuntary termination of parental rights by the State for abuse or neglect of a child, whereas Title 42, chapter 2, part 6, MCA, allows certain private parties to file a petition to involuntarily terminate parental rights to a child on the grounds enumerated in § 42-2-607, MCA, when the proceedings also involve the subsequent adoption of the child.

¶13 Indigent parents at risk of losing their parental rights under the provisions of Title 41 are entitled to counsel. Sections 41-3-422(11), -425(2)(a), MCA (requiring courts to immediately appoint counsel "pending a determination of eligibility pursuant to 47-1-111"). The attorney general, county attorneys, and attorneys hired by counties are required to use the process prescribed by Title 41, chapter 3 of the Montana Code when seeking termination of parental rights for abuse or neglect. Section 41-3-422(2), MCA.

¶14 Under the statutory framework set out in the Adoption Act, however, an indigent parent may have her rights involuntarily terminated by a court without any right to counsel. As happened here, a parent may have her rights terminated in an adoption proceeding on the same grounds that allow for termination in a child abuse and neglect proceeding. The Adoption Act provides for the involuntary termination of parental rights where a court has determined that the parent is "unfit." Section 42-2-607(2), MCA. Among other factors, a court may find that a parent is unfit if the parent has "willfully abandoned" the child, as defined in § 41-3-102, MCA, the same definition of abandonment applied in abuse and

neglect proceedings. Section 42-2-608(1)(b), MCA. The District Court made such a finding in this case. A court also may find a parent unfit where clear and convincing evidence demonstrates that "placing the child in the [parent]'s legal and physical custody would pose a risk of substantial harm to the physical or psychological well-being of the child because the circumstances . . . indicate[] that the [parent] is unfit to maintain a relationship of parent and child with the child," or that "failure to terminate the relationship of parent and child would be detrimental to the child." Section 42-2-608(1)(h)(ii)(C), (D), MCA.

¶15 Even though a court may terminate a parent's rights involuntarily under either statutory framework, indigent parents at risk of losing their parental rights are afforded a right to counsel only in abuse and neglect proceedings under Title 41. Thus, Montana's statutes create two similarly situated classes: indigent parents facing involuntary termination of parental rights on a petition by the state under § 41-3-422, MCA, and indigent parents facing involuntary termination of parental rights in an adoption proceeding under § 42-2-603, MCA. Both proceedings involve a court permanently and involuntarily terminating a parent's fundamental interest in the care and custody of her children because the parent is unfit. Yet only the parent in the former proceeding is entitled to counsel. Although the grounds for a finding of unfitness are not identical, the fundamental right to parent is equally imperiled whether the proceedings are brought by the State or by a private party. Because, in either case, a parent stands to lose the same fundamental constitutional right on a judicial determination of unfitness, we conclude that Mother is, for equal

protection purposes, similarly situated to a parent in a state termination proceeding. *See In re L.T.M.*, 824 N.E.2d 221, 230-31 (Ill. 2005).

¶16    The next step in our equal protection analysis is to determine the appropriate level of scrutiny. *Snetsinger*, ¶ 17. Strict scrutiny applies if a fundamental right is affected. *Snetsinger*, ¶ 17. The U.S. Supreme Court has said that a parent's interest in custody of a child "is perhaps the oldest of the [recognized] fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). Montana also has determined that the right to parent one's child is a fundamental right. *Snetsinger*, ¶ 16; *In re L.V-B.*, ¶ 15. Because the challenge here implicates a fundamental right, we apply strict scrutiny.

¶17    In applying the strict scrutiny standard, we determine if the disparity in the current statutory framework is narrowly tailored to serve a compelling governmental interest. *Snetsinger*, ¶ 17. Ordinarily, the burden of proof falls on the State. *Snetsinger*, ¶ 17. The State is not a party here, which raises the question whether the State is involved sufficiently to warrant application of the equal protection clause. *See In re Adoption of K.A.S.*, 499 N.W.2d 558, 565-66 (N.D. 1993); *In re S.A.J.B.*, 679 N.W.2d 645, 650-51 (Iowa 2004).

> A stepparent adoption differs from other parental termination cases in that it is not an action brought by the state and argued by state attorneys. But neither is the adoption proceeding a purely private dispute. The state is called upon to exercise its exclusive authority to terminate the legal relationship of parent and child and establish a new relationship, in accordance with an extensive statutory scheme. . . .

*In re K.A.S.*, 499 N.W.2d at 565-66 (quoting *In re Jay*, 150 Cal. App. 3d 251, 262, 197 Cal. Rptr. 672, 680 (Ct. App. 1983)).

7

¶18 Under the Montana Adoption Act, like the laws considered in these cases, the State is an integral part of the process in private terminations. *See* Title 42, chapters 2-5, MCA. Whether an involuntary termination proceeding is initiated by the state or by a private party in conjunction with an adoption petition, "the challenged state action remains essentially the same: [a parent] resists the imposition of an official decree extinguishing, as no power other than the State can, her parent-child relationships." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 n. 8, 117 S. Ct. 555, 564 n. 8 (1996); *In re L.T.M.*, 824 N.E.2d at 230; *see also O.A.H. v. R.L.A.*, 712 So. 2d 4, 6 (Fla. Dist. Ct. App. 2d Dist. 1998); *In re K.L.J.*, 813 P.2d 276, 283 (Alaska 1991). We conclude that the extent of State involvement in adoption proceedings is sufficient to trigger the requirement of Article II, Section 4, of the Montana Constitution that equal protection of the law be afforded to individuals who are similarly situated. *See also In re K.A.S.*, 499 N.W.2d at 566.

¶19 The Stepmother has not addressed directly whether the differences in the current statutory scheme are narrowly tailored to serve a compelling governmental interest. Instead, she argues that Mother "was not a novice to the legal system" because previously she had been provided with counsel in other proceedings, and that Mother raised the right to counsel for the first time on appeal. We address these arguments briefly.

¶20 First, Mother's ability to obtain legal services through the public defender's office in unrelated cases has no bearing on the question posed here. Mother's involvement in separate criminal and youth in need of care cases concerned different interests—these prior cases did not jeopardize Mother's right to parent A.W.S. and K.R.S. Any relevance they

have to the issue under consideration may be to indicate Mother's indigence, having twice qualified for appointed counsel.

¶21 Second, although Mother did not request counsel formally, we have recognized that pro se litigants are not required to use specific words when requesting counsel. *State v. Buck*, 2006 MT 81, ¶ 48, 331 Mont. 517, 134 P.3d 53 ("[W]e still adhere to the rule that invocation of [the right to counsel] does not depend on the use of any particular words"); *State v. Johnson*, 221 Mont. 503, 514, 719 P.2d 1248, 1255 (1986), *overruled in part on unrelated grounds by Buck*, ¶ 48 ("To require precise words be uttered would elevate form over substance."); s*ee e.g. In re Fernandez*, 399 N.W.2d 459, 460-61 (Mich. Ct. App. 1986); *In re Adoption of J.D.F.*, 761 N.W.2d 582, 587-88 (N.D. 2009) (where a parent articulated his desire for an attorney and his inability to procure legal assistance, the trial court erred by not advising him of his state constitutional right to counsel). In this case, where Mother was not advised of any right to counsel, she preserved the issue when she explained that she represented herself only because she did not have the money to employ an attorney.

¶22 Whether Mother has a right to appointed counsel depends on whether the difference between the two statutory methods is narrowly tailored to serve a compelling governmental interest. More specifically, is there a compelling reason why counsel is provided to an indigent parent facing the involuntary termination of her parental rights in abuse and neglect proceedings, but not when such proceedings are commenced under the Adoption Act? Though Stepmother does not address this point, the governmental interest identified frequently as possible justification for denial of the right to counsel to indigent parents is

9

the State's pecuniary interest in "avoid[ing] both the expense of appointed counsel and the cost of the lengthened proceedings [the] presence [of counsel] may cause." *Lassiter*, 452 U.S. at 28, 101 S. Ct. at 2160; *In re L.T.M.*, 824 N.E.2d at 231 ("The only state interest served by denying appointed counsel under the Adoption Act is the interest in limiting the payment of attorney fees."). The U.S. Supreme Court has observed, however, that "though the State's pecuniary interest is legitimate, it is hardly significant enough to overcome private interests as important as those here[.]" *Lassiter*, 452 U.S. at 28, 101 S. Ct. at 2160.[2]

¶23 The differences between the involuntary termination provisions in the abuse and neglect statutes and in the Adoption Act are not narrowly tailored to serve a compelling governmental interest. The state's pecuniary interests do not justify the denial of the right to counsel to indigent parents in involuntary terminations under the Adoption Act, where that same right is provided to indigent parents in state-initiated involuntary terminations.

¶24 Courts have held in similar contexts that where a statute violates equal protection because of underinclusion, a court "may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion." *Welsh v. United States*, 398 U.S. 333, 361, 90 S. Ct. 1792, 1807-08 (1970) (Harlan, J., concurring), *cited in In re K.A.S.*, 499 N.W.2d at 567; *In re S.A.J.B.*, 679 N.W.2d at 651. Extending coverage is the

---

[2] The U.S. Supreme Court held in *Lassiter* that an indigent parent's right to counsel under the federal due process clause must be made on a case-by-case basis. *Lassiter*, 452 U.S. at 31, 101 S. Ct. at 2161. Although the Court ultimately affirmed the trial court's failure to appoint counsel to Ms. Lassiter, it did so only after noting that Ms. Lassiter "expressly declined to appear at [her] child custody hearing," "had not even bothered to speak to her retained lawyer after being notified of the termination hearing," and "fail[ed] to make an effort to contest the termination proceeding." Because *Lassiter* involved the federal due process clause and considerably different facts—and because it did not address the equal protection issue we face here—it has limited application.

appropriate remedy in this case. Denying counsel in all termination proceedings would contravene legislative intent. *See In re S.A.J.B.*, 679 N.W.2d at 651. The legislature has provided a categorical right to counsel to indigent parents in state-initiated termination proceedings. Section 41-3-425(2)(a), MCA.

¶25 Further, denying the right to counsel in state-initiated termination proceedings would call into question the constitutionality of those proceedings. *In re S.A.J.B.*, 679 N.W.2d at 651 (citing *Lassiter*, 452 U.S. at 31-32, 101 S. Ct. at 2161-62). There is a "substantial risk of an unfair procedure and outcome" in proceedings brought to terminate parental rights. *In re A.S.A*, 258 Mont. 194, 198, 852 P.2d 127, 129-30 (1993). We have observed:

> Without representation, a parent would not have an equal opportunity to present evidence and scrutinize the State's evidence. The potential for unfairness is especially likely when an indigent parent is involved. Indigent parents often have a limited education and are unfamiliar with legal proceedings. If an indigent parent is unrepresented at the termination proceedings, the risk is substantial that the parent will lose her child due to intimidation, inarticulateness, or confusion.

*In re A.S.A*, 258 Mont. at 198, 852 P.2d at 129; *see also In re Declaring A.N.W.*, 2006 MT 42, ¶ 34, 331 Mont. 208, 130 P.3d 619 ("A parent's right to the care and custody of a child represents a fundamental liberty interest, and consequently, the state must provide fundamentally fair procedures at all stages in the proceedings to terminate parental rights."). Unfairness in a termination proceeding also has profound implications for the future of the child, and the risk of an unfair decision is equally significant to parent and child in both public and private proceedings.

¶26 A parent responding to private termination proceedings should not bear the disadvantage of the inability to obtain counsel. The decision to grant "the opportunity for a parent to benefit from the privilege of assistance by counsel in one mode of termination of parental rights requires that the opportunity to exercise that privilege be extended to all similarly situated parents directly threatened with permanent loss of parental rights." *Zockert v. Fanning*, 800 P.2d 773, 778 (Or. 1990); *accord Crowell v. State Pub. Defender*, 845 N.W.2d 676 (Iowa 2014). We conclude that Montana's right to equal protection requires that counsel be appointed for indigent parents in termination proceedings brought under the Adoption Act. On remand, the District Court is directed to appoint counsel for Mother, if it determines that she is financially eligible.[3]

¶27 Although Mother raises a separate due process argument, we need not address whether due process considerations alone would require a right to counsel under these circumstances. Courts that have considered the right to counsel for private termination proceedings on equal protection grounds have found that the right cannot be provided in state-initiated termination proceedings but denied in private terminations. *E.g. In re L.T.M.*, 824 N.E.2d at 229-32; *In re S.A.J.B.*, 679 N.W.2d at 648-51 (noting that a similar equal protection question "remains open under the federal constitution"); *In re Adoption of Meaghan*, 961 N.E.2d 110 (Mass. 2012); *In re K.A.S.*, 499 N.W.2d at 563; *Zockert*, 800 P.2d

---

[3] In abuse and neglect proceedings, the office of the state public defender is appointed and assigns counsel to represent indigent parents after determining eligibility as provided in § 47-1-111, MCA. Section 41-3-425, MCA. The public defender also is responsible for assigning counsel in paternity proceedings to indigent parties, including the natural mother and persons presumed or alleged to be the father. Sections 40-6-110, -119, MCA. The Adoption Act allows the payment of a birth parent's legal fees by the adoptive parent. Sections 42-7-101(1)(i), 42-7-102(2), MCA. We leave the manner of appointment of counsel in each case to the district courts' discretion.

at 776. Our interpretation of Montana's equal protection clause requires the same result here. Because we have decided this case on independent and adequate State grounds under Montana's equal protection clause, *Mich. v. Long*, 463 U.S. 1032, 103 S. Ct. 3469 (1983), we do not address Mother's due process arguments.

## CONCLUSION

¶28    We reverse the decision of the District Court and remand for the appointment counsel for Mother, and for a new hearing.


                                        /S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA