No. 92-369

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN THE MATTER OF A.S.A.,
J.L.A., G.A., and A.J.A.,

YOUTHS IN NEED OF CARE.



FILED

MAY 6  1993

*Ed Smith*

CLERK OF SUPREME COURT

APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Joseph R. Massman, Massman Law Firm,
Helena, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena,
Montana; Deborah F. Butler, Deputy Jefferson
County Attorney, Boulder, Montana

Guardian Ad Litem:

Paul B. Smith, Attorney at Law,
Boulder, Montana

Submitted on Briefs:   January 7, 1993

Decided:   May 6, 1993

Filed:

Justice Terry N. Trieweiler delivered the opinion of the Court.

This is an appeal from an order of the Fifth Judicial District Court, State of Montana, terminating a mother's parental rights to her four children and awarding permanent legal custody to the Department of Family Services. The mother asserts on appeal that the District Court violated her constitutional right to due process and denied her statutory right to appointed counsel when the court refused to appoint counsel for her at the hearing to terminate her parental rights. We reverse.

The dispositive issue on appeal is:

Did the District Court err when it refused to appoint counsel to represent an indigent mother in proceedings brought to involuntarily terminate her parental rights?

On August 13, 1990, the Department of Family Services (DFS) petitioned for temporary investigative authority and temporary emergency protection of D.A.'s four children. The District Court granted the DFS petition. In August 1991, the court granted a subsequent petition by the DFS to continue temporary investigative authority and protection services for the four children.

On December 18, 1991, the DFS filed a petition for termination of D.A.'s parental rights and permanent legal custody with the right to consent to adoption. A termination hearing was held on February 5, 1992. In the initial minutes of the hearing, Joseph Massman, guardian ad litem for the children, informed the court that D.A., an indigent mother, was not represented by counsel. Massman explained to the court that D.A. was entitled to appointed

2

counsel at the hearing to terminate her parental rights, and requested that an attorney be appointed to represent her.

The court acknowledged that D.A. was entitled to an attorney in the termination proceedings; however, the court elected to proceed without appointing counsel for D.A., because according to the District Court, the DFS was prepared to present its evidence and the judge wanted to hear it. The court asked D.A. directly if she was going to contest not having an attorney and D.A. indicated that she planned to do so.

Massman made numerous comments to the court throughout the hearing to the effect that D.A. was unrepresented by counsel and that she was entitled to counsel at the termination proceedings. In spite of such suggestions, however, the court continued to hear evidence without appointing counsel for D.A.

At one point in the hearing, the court admonished Massman that he was abdicating his position as guardian ad litem for the children and that he was advocating for the mother. At another time, the court warned Massman that he could not serve two masters. However, the court did not stop the termination proceedings and appoint counsel for D.A.

At the conclusion of the termination hearing on February 5, 1992, the District Court "tentatively" terminated D.A.'s parental rights to her children. The court informed the parties that the decision to terminate was based on the evidence presented at the hearing. The parties were told that the termination was tentative because D.A. was not formally represented at the hearing. The

3

court reserved the right to amend its decision to terminate and explained that additional reports filed by the attorneys would be considered. The court then removed Massman as the guardian ad litem for the children and appointed Massman to be attorney for D.A., the mother. Paul Smith was appointed as guardian ad litem for the children.

In an omnibus order dated February 5, 1992, (the same date as the hearing), the District Court directed the deputy county attorney to prepare proposed Findings of Fact and Conclusions of Law supporting the court's decision to terminate D.A.'s parental rights. The court also ordered both Massman and Smith to review the proposed findings, to conduct further inquiry, and to each make a formal recommendation to the court as to whether D.A.'s parental rights should be terminated.

On February 13, 1992, the court issued temporary Findings of Fact and Conclusions of Law and Order in which D.A.'s parental rights were terminated. Attorney Massman filed two reports, dated April 8 and April 16, 1992. Attorney Smith filed a report dated April 15, 1992. On May 4, 1992, the court issued its final order and reaffirmed its earlier decision to terminate D.A.'s parental rights to her four children. D.A. appeals.

D.A. asserts on appeal that when the District Court refused to appoint counsel to represent her at the hearing to terminate her parental rights, the court (1) violated her constitutional right to due process, and (2) deprived her of her statutory right to appointed counsel. D.A. contends that the due process clause found

4

at Article II, § 17, of the Montana Constitution guarantees indigent parents the right to court-appointed counsel in proceedings to terminate parental rights. We agree.

The United States Supreme Court has ruled that a natural parent's right to the care and custody of his or her child is a "fundamental liberty interest" that must be protected by fundamentally fair procedures. *Santosky v. Kramer* (1982), 455 U.S. 745, 753-54, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599, 606. In *Santosky*, the Court explained:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky*, 455 U.S. at 753-54.

In *Matter of R.B.* (1985), 217 Mont. 99, 102-03, 703 P.2d 846, 848, the Montana Supreme Court recognized that a natural parent's right to the care and custody of his or her child is a "fundamental liberty interest." This Court also affirmed the requirement set forth in *Santosky* that when the State moves to terminate a parent's rights, the parent must be protected by fundamentally fair procedures. *Matter of R.B.*, 703 P.2d at 848.

5

The guarantee of fundamental fairness in judicial proceedings to terminate parental rights has its source in our State Constitution. Article II, § 17, of the Montana Constitution requires that "[n]o person shall be deprived of life, liberty, or property without due process of law." When the State seeks to terminate a parent's liberty interest in the care and custody of her child, due process requires that the parent not be placed in an unfair disadvantage during the termination proceedings. Fairness requires that a parent, like the State, be represented by counsel at parental termination proceedings. Without representation, a parent would not have an equal opportunity to present evidence and scrutinize the State's evidence.

The potential for unfairness is especially likely when an indigent parent is involved. Indigent parents often have a limited education and are unfamiliar with legal proceedings. If an indigent parent is unrepresented at the termination proceedings, the risk is substantial that the parent will lose her child due to intimidation, inarticulateness, or confusion. *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 47, 101 S. Ct. 2153, 2170, 68 L. Ed. 2d. 640, 662 (Blackmun, J., dissenting). Because of the substantial risk of an unfair procedure and outcome, and the guarantee under our Constitution of fundamental fairness, we hold, as a growing number of other jurisdictions have concluded, that the due process clause in our State Constitution guarantees an indigent parent the right to court-appointed counsel in proceedings brought to

6

terminate parental rights. *See V.F. v. State* (Ak. 1983), 666 P.2d 42; Joel E. Smith, J.D., Annotation, *Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights*, 80 A.L.R.3rd 1141 (1977).

Our review of the record reveals that during the proceedings to terminate D.A.'s parental rights, D.A. was not represented by counsel. The court appointed counsel for D.A. at the end of the termination hearing; however, this late action was no substitute for representation during the hearing. It was the evidentiary hearing which formed the basis of the court's decision to terminate D.A.'s parental rights.

We conclude that because D.A. was not protected by a fundamentally fair procedure at the hearing to terminate her parental rights, her constitutional right to due process was violated.

We hold that the District Court committed reversible error when it denied D.A.'s request for court-appointed counsel at the termination hearing. We reverse the judgment of the District Court and remand this case for determination of D.A.'s parental rights in further proceedings consistent with this opinion.

_____

Justice

7

We concur:

_____
             Chief Justice

_____

_____

_____
        Justices

8

May 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


JOSEPH R. MASSMAN
Massman Law Firm
P.O. Box 804
Helena, MT  59624

HON. MARC RACICOT, Attorney General
        , Assistant
Justice Building
Helena,  MT 59620

Deborah F. Elmore
Deputy Jefferson County Attorney
Courthouse P. O. Box H
Boulder, MT 59632

Paul B. Smith
Attorney at Law
P.O. Box 565
Boulder, MT  59637


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
        Deputy