FILED

August 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0669

DA 14-0669

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 231

IN THE MATTER OF THE TERMINATION
OF THE PARENTAL RIGHTS AND ADOPTION OF:
J.W.M. and A.K.M., minor children,

J.M.,

        Respondent and Appellant,

   v.

R.H. and C.M.,

        Petitioners and Appellees.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. CDA 12-094, CDA 12-095
                    Honorable Kenneth Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Carl B. Jensen, Jr., Attorney at Law, Great Falls, Montana

        For Appellees:

                Tonja Schaff Kostelecky, Attorney at Law, Great Falls, Montana

                                Submitted on Briefs:  May 27, 2015
                                      Decided:  August 11, 2015

Filed:

                               _____
                                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 C.M. and J.M. are the biological parents of minor children, A.K.M. and J.W.M., born in 2007 and 2008 respectively. Following C.M. and J.M.'s 2009 Colorado divorce, C.M. moved to Montana with the children. In December 2011, she registered the Colorado judgment in the Montana Eighth Judicial District Court, Cascade County. In June 2012, C.M. married R.H. who now wants to adopt the children. In December 2012, C.M. and R.H. petitioned the District Court to terminate J.M.'s parental rights on multiple grounds and to allow the adoption to proceed. Following a termination hearing, the District Court granted the petition. J.M. appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The biological parents were married in 2006 and divorced in 2009. Based upon J.M.'s acknowledged drug and alcohol addiction throughout their courtship and marriage, the Colorado court issuing the divorce decree ordered, among other things, that J.M. submit to monthly drug testing and provide the results to C.M. If J.M. failed a test or failed to submit the results of a test to C.M., J.M. would relinquish parental visitation until he provided results of a clean test. Additionally, J.M. was ordered to pay monthly child support.

¶3 On December 5, 2012, C.M. and R.H. (Petitioners) petitioned the District Court to terminate J.M.'s parental rights and allow R.H. to adopt the children. Petitioners presented multiple grounds upon which to terminate J.M.'s parental rights including his continued drug and alcohol abuse and failure to pass court-ordered drug tests; failure to pay child support between March 2010 and April 2012 creating arrears of approximately $9,500; and failure to

2

maintain a relationship through visitation with either child for several years. Petitioners asserted that J.M. was unfit to parent the children.

¶4 In May 2013, the parties attended mediation and agreed upon an Interim Parenting Plan (IPP or Plan) which was approved and ordered by the District Court and went into effect on June 1, 2013. The Plan was intended to promote J.M.'s reunification with his children and allow for visitation under certain conditions, including clean monthly drug tests. It required J.M. to undergo drug testing between the first and the fifth of each month and to allow the testing facility to provide the testing results to C.M. It also provided that failure to submit two tests would result in immediate termination of the IPP. The District Court issued the written version of the IPP in August 2013.

¶5 In January 2014, Petitioners filed a motion to enforce the IPP and allow termination of J.M.'s parental rights and adoption by R.H. Petitioners alleged that while J.M. submitted the results of two drug tests taken in accordance with the IPP, he submitted the results for three tests that were taken outside of the specified dates of the first-to-the-fifth, and he failed to submit test results for September and December 2013, in violation of the IPP. C.M. and R.H. further argued that termination of J.M's parental rights was appropriate because he was not maintaining consistent contact with the children or building a meaningful relationship with them, and was unable to maintain a stable lifestyle.

¶6 In February 2014, J.M.'s counsel notified the court that he was ill and could no longer represent J.M. On March 10, 2014, J.M. filed a pro se response to Petitioners' motion disputing Petitioners' allegations and requesting a hearing. On April 9, 2014, Petitioners filed a reply brief in which they also sought a hearing. Counsel for J.M. withdrew on April

3

15, 2014. On April 17, 2014, the District Court entered an order setting a termination hearing for July 16, 2014.

¶7    At the hearing, J.M. appeared pro se. On September 18, 2014, the court issued its Findings of Fact, Conclusions of Law and Order, in which it terminated J.M.'s parental rights. Subsequently, following an adoption hearing on October 1, 2014, the adoption of the children by R.H. became final. On October 17, 2014, represented by new counsel, J.M. filed a Notice of Appeal.

## ISSUES

¶8    A restatement of the issues on appeal is:

¶9    Did the District Court abuse its discretion by terminating J.M.'s parental rights?

¶10    Did the District Court err in conducting the termination hearing in the absence of legal representation for J.M.?

## STANDARD OF REVIEW

¶11    We review a district court's decision to terminate parental rights for an abuse of discretion. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *In re J.C.*, 2008 MT 127, ¶ 33, 343 Mont. 30, 183 P.3d. 22 (internal quotations and citations omitted).

¶12    When making a decision to terminate parental rights under §§ 42-2-607 and -608, MCA, the district court must make specific factual findings, just as it does in accordance with the requirements of §§ 42-2-607 and -608, MCA. We review these factual findings under the clearly erroneous standard. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our

4

review of the record convinces us that a mistake has been committed. We review the district court's conclusions of law terminating parental rights to determine if they are correct. *In re J.C.*, ¶ 34 (internal quotations and citations omitted).

**DISCUSSION**

¶13 *Did the District Court abuse its discretion by terminating J.M.'s parental rights?*

¶14 Because termination of J.M.'s rights was sought by a prospective adoptive parent, this matter is governed by § 42-2-601, et seq, MCA. Section 42-2-607, MCA, provides, in relevant part:

> The court may terminate a parent's rights to a child who is the subject of an adoption proceeding based upon:
>
> .   .   .
>
> (2) a determination under 42-2-608 that the parent is unfit;
> (3) a determination under 42-2-609 that the relationship of parent and child does not exist;
> (4) a determination under 42-2-610 that a putative father has failed to establish and maintain a substantial relationship with the child.
>
> .   .   .

¶15 The District Court made a determination of "unfitness" under § 42-2-607(2), MCA, which required it to analyze fitness under § 42-2-608, MCA. The relevant sections of § 42-2-608, MCA, are:

> (1)The court may terminate parental rights for purposes of making a child available for adoption on the grounds of unfitness if:
>
> .   .   .
>
> (c) it is proven to the satisfaction of the court that the parent, if able, has not contributed to the support of the child for an aggregate period of 1 year before the filing of a petition for adoption;
> (d) it is proven to the satisfaction of the court that the parent is in violation of a court order to support either the child that is the subject of the adoption proceedings or other children with the same birth mother;
>
> .   .   .
>
> (h) a finding is made for a parent who is given proper notice of hearing and is

5

a respondent to the petition to terminate parental rights and:

(i) by a preponderance of the evidence, it is found that termination is in the best interests of the child; and

(ii) upon clear and convincing evidence it is found that one of the following grounds exists:

. . .

(B) if the child is in the legal and physical custody of the other parent and a stepparent who is the prospective adoptive parent, that the respondent is not able or willing to promptly establish and maintain contact with the child and to pay for the child's support in accordance with the respondent's financial means;

(C) placing the child in the respondent's legal and physical custody would pose a risk of substantial harm to the physical or psychological well-being of the child because the circumstances of . . . the respondent's behavior . . . since the child's birth . . . indicates that the respondent is unfit to maintain a relationship of parent and child with the child; or

(D) failure to terminate the relationship of parent and child would be detrimental to the child.

(2) In making a determination under subsection (1)(h)(ii)(D), the court shall consider any relevant factor, including the respondent's efforts to obtain or maintain legal and physical custody of the child, the role of other persons in thwarting the respondent's efforts to assert parental rights, the respondent's ability to care for the child, the age of the child, the quality of any previous relationship between the respondent and the child and between the respondent and any other children, the duration and suitability of the child's present custodial environment, and the effect of a change of physical custody on the child.

¶16 Following the termination hearing at which the court heard testimony from all of the parties as well as other witnesses, including family, friends and co-workers, the District Court determined that J.M. was unfit to maintain a parental relationship with A.K.M. and J.W.M. Consequently, the court terminated his parental rights and allowed the adoption to proceed. Citing the appropriate statutory sections noted above, the District Court set forth eight reasons that informed its order of termination:

(1)      J.M. has not established or maintained contact with the children;

6

(2)     J.M. has not paid consistent child support in accordance with his means;

(3)     It is not in either child's best interest to be placed in J.M.'s care as his behavior, prior drug use and failure to submit to drug tests as ordered by the [c]ourt indicates J.M. is unfit to maintain a relationship with the minor children;

(4)     Failing to terminate the relationship between J.M. and A.K.M. and J.W.M. and require them to have time with J.M. would be detrimental to A.K.M. and J.W.M. as they could be exposed to drug use;

(5)     Neither minor child has a significant relationship with J.M.;

(6)     J.M. has not fully financially supported the children;

(7)     J.M. has abandoned the children for several months and weeks over several separate periods of time; and

(8)     J.M. has had minimal contact with the minor children for several years.

¶17     As application of § 42-2-608(1)(h)(i) and (ii)(C) and (D), MCA, provide dispositive justification for termination of J.M.'s rights, we need not address the District Court's analysis and application of other statutory provisions or J.M.'s associated arguments on appeal.

¶18     J.M. argues that the District Court's findings of fact under § 42-2-608(1)(h)(ii)(C), MCA, are insufficient to establish a "risk of substantial harm," to the children.  He claims that the court did not identify the types of drugs he was using, whether the drugs were legal or illegal, or how these drugs adversely affect his ability to parent his children.  He also argues that the court's findings were insufficient in that they failed to state when the drug abuse or failed tests occurred.

¶19     While the District Court did not set forth in its Order the litany of drugs ingested over the years by J.M., the record, through J.M.'s own admissions, clearly establishes that J.M.

7

has used acid, marijuana, heroin, oxycontin, cocaine, crack, methamphetamine, and alcohol. He further admitted to "huffing." It is apparent that the majority of these substances are neither prescribed nor legal and J.M. did not attempt to argue during trial that he obtained or ingested these drugs lawfully. Additionally, in a public forum website in September 2013, J.M. characterized himself as "a raging addict." He admitted at trial that (1) as an addict he purchased drugs instead of paying child support, (2) he forged the results of one or more earlier drug tests that he took under the terms of the divorce decree, and (3) he chose drugs over time with his children. Furthermore, he violated the IPP by refusing to take the tests in September and December 2013. J.M. also acknowledged the possibility that he would not succeed in obtaining permanent sobriety.

¶20    We conclude the District Court's findings of fact regarding J.M.'s drug and alcohol use and its conclusion that exposing the children to this behavior would be detrimental to them are supported by the record, and its determination of unfitness is supported by substantial evidence. The court did not abuse its discretion in terminating J.M.'s parental rights.

¶21     *Did the District Court err in conducting the termination hearing in the absence of legal representation for J.M.?*

¶22     Relying exclusively upon *In re the Adoption of A.W.S. and K.R.S.*, 2014 MT 322, 377 Mont. 234, 339 P.3d 414, J.M. asserts that he was entitled to have counsel represent him at the termination hearing and the District Court's failure to make appropriate inquiries or appoint counsel constitutes reversible error.  Petitioners counter that *A.W.S.* is distinguishable, that J.M. received appropriate notice of his right to obtain new counsel after his counsel withdrew, and that he presented no evidence of indigency.  *In re P.D.L.*, 2004 MT 346, ¶ 20, 324 Mont. 327, 102 P.3d 1225.

¶23     In *A.W.S.*, father's new wife, Stepmother, moved to terminate biological mother's parental rights and adopt the children.  Mother was present at the termination hearing and testified under direct examination by Stepmother's counsel.  She objected to the termination but did not call witnesses, put on evidence, cross-examine witnesses, or testify on her own behalf.  Mother clearly advised the court that she was representing herself because she did not have the money to obtain counsel.  *A.W.S.*, ¶¶ 5-7.  The district court terminated her rights and allowed the adoption to proceed.  On appeal, premised upon a Constitutional equal protection analysis, we concluded that an indigent parent at risk of losing parental rights as part of an adoption proceeding initiated by a private party was entitled to counsel just as was an indigent parent at risk of losing parental rights in an abuse and neglect proceeding initiated by the State.  *A.W.S.*, ¶ 26.

¶24     In *A.W.S.*, while noting that self-represented parties are not required to use "particular words" when requesting counsel, we concluded that Mother adequately preserved this issue

9

"when she explained that she represented herself only because she did not have the money to employ an attorney." *A.W.S.*, ¶ 21. Conversely, in the case before us, J.M. was represented by counsel during much of the reunification part of the proceeding. Upon counsel's withdrawal, J.M. was statutorily notified under Rule 10(b) of Montana Uniform District Court Rules by Petitioners' counsel that he was entitled to appoint other counsel or represent himself. At the hearing, the District Court expressly asked J.M. if he was appearing pro se. J.M.'s only response was "Correct, Your Honor." During the hearing, J.M. conducted a short cross-examination of one of Petitioners' witnesses, directly examined three witnesses, and testified on his own behalf. The District Court granted J.M. wide latitude in presenting his case based upon his unrepresented status. J.M. never requested appointed counsel nor did he suggest or imply that he did not have the money to engage a new attorney. Notably, on appeal, J.M. is once again represented by counsel.

¶25     While it does not take "particular words" to request counsel, some indication must be given to the court that respondent wishes counsel to be appointed because he is indigent or financially unable to secure representation in an involuntary termination proceeding. J.M. gave no such indication. We therefore conclude that *A.W.S.* is inapplicable here and that the District Court did not err in conducting the proceedings in the absence of counsel.

## CONCLUSION

¶26     The evidence presented at the hearing supports the District Court's conclusion that based upon J.M.'s history of drug and alcohol addiction, his lengthy absences from his children's lives, and his failure to consistently financially support his children, termination of J.M.'s rights was in the best interests of the children, and that failure to terminate could have

10

put the children at risk of exposure to drug and alcohol abuse. We therefore affirm the

District Court's termination of J.M.'s parental rights and the order permitting the adoption of

the children.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE