Justice Jim Rice delivered the Opinion of the Court.
***63 ¶1 A.K.R. (Father) appeals from the Order and Decree of Adoption issued by the Thirteenth *1031 Judicial District Court, Yellowstone County, terminating his parental rights and ordering the adoption of his minor daughter, L.F.R., by her stepfather, K.J.D. We reverse and remand for further proceedings, addressing the following issue:
Did the District Court err by terminating Father's parental rights in violation of his right to counsel?
FACTUAL AND PROCEDURAL BACKGROUND [1]
¶2 L.F.R. is the natural child of Father and S.M.T. (Mother). The District Court found that L.F.R. "has been with [Mother] and in her custody ever since birth," but that L.F.R.'s paternal great-grandparents "have been parenting the minor child under the Final Parenting Plan dated April 16, 2015." Prior to and during the time covered by the Final Parenting Plan, Father failed to exercise his visitation rights with L.F.R., did not financially contribute to L.F.R.'s care, or otherwise be involved "in any meaningful way" with her life.
¶3 In December 2015, Mother married K.J.D., who became L.F.R.'s stepfather. L.F.R. began living with Mother and K.J.D., and, in March 2018, K.J.D. petitioned for termination of Father's parental rights, and for adoption of L.F.R., pursuant to § 42-2-608, MCA. At the May 7, 2018 hearing on the petition, K.J.D., Mother, and L.F.R.'s paternal great-grandparents all appeared and were represented by counsel. Father also appeared, but was not represented by counsel.
¶4 On May 12, 2018, the District Court entered an order terminating ***64 Father's parental rights and granting K.J.D.'s petition to adopt L.F.R., concluding the adoption was in L.F.R.'s best interests. The District Court did not address either any position taken by L.F.R.'s great-grandparents on the petition, or the status of their interest under the Final Parenting Plan.
¶5 Father appeals, contending the District Court's failure to notify him of his right to counsel during the proceeding violated his constitutional rights. Additional facts will be discussed herein.
STANDARD OF REVIEW
¶6 The Court's review of constitutional questions is plenary. A.W.S. v. A.W ., 2014 MT 322, ¶ 10, 377 Mont. 234, 339 P.3d 414. We review a district court's decision to terminate parental rights for abuse of discretion, determining whether the court's underlying factual findings were clearly erroneous. J.M. v. R.H. , 2015 MT 231, ¶¶ 11-12, 380 Mont. 282, 354 P.3d 626. Issues of law are reviewed for correctness. J.M. , ¶ 12.
DISCUSSION
¶7 Did the District Court err by terminating Father's parental rights in violation of his right to counsel?
¶8 Appellant argues he was "entitled to have an attorney appointed to represent him" during the adoption hearing, and the District Court's failure to notify him of this right violated equal protection guarantees under Article II, Section 4, of the Montana Constitution and the Fourteenth Amendment of the United States Constitution. Father relies on A.W.S. v. A.W. , arguing that, like the indigent mother therein, he was entitled to legal representation at the hearing, but "was not sufficiently astute to formally request the appointment of an attorney."
¶9 In A.W.S ., we held the statutory provision of counsel for indigent parents facing state-initiated termination of their parental rights under Title 41, MCA, must be extended to indigent parents in private adoption proceedings under Title 42, MCA, on the ground of constitutional equal protection. A.W.S ., ¶¶ 13-26 (citing § 41-3-422(11), MCA ). We reasoned the right to parent a child is fundamental and must be afforded equal protection under the law, regardless of whether the state or a private party was initiating termination of a parent's right. A.W.S. , ¶¶ 16, 18 (citing *1032 M.L.B. v. S.L.J. , 519 U.S. 102, 116 n.8, 117 S.Ct. 555, 564, 136 L.Ed.2d 473 (1996) ). We concluded that any indigent parent at risk of permanently losing their parental rights is entitled to " 'benefit from the privilege of assistance by counsel.' " A.W.S. , ¶ 26 (quoting ***65 Zockert v. Fanning , 310 Or. 514, 800 P.2d 773, 778 (1990) ); see also In re A.S.A., 258 Mont. 194, 197, 852 P.2d 127, 129 (1993) (holding the Montana Constitution "guarantees indigent parents the right to court-appointed counsel in proceedings to terminate parental rights"); and In re M.V.R. , 2016 MT 309, ¶ 51, 385 Mont. 448, 384 P.3d 1058 ("[P]arents at risk of having their parental rights terminated [have] the right to counsel and the right to appointed counsel if indigent, at all termination proceedings."). Here, Father faced the risk of permanently losing his parental rights to L.F.R. via a private adoption proceeding under Title 42, MCA, and was thus entitled to court-appointed counsel if he qualified as indigent.
¶10 Appellee K.J.D. first argues that Father "failed to object to the adoption at the time of hearing, despite testifying on his own behalf." However, the District Court found in its order that Father "did object to the adoption proceeding," and K.J.D. has not established from the record that this finding is clearly erroneous. Regarding the right to counsel, the parties agree the District Court did not advise Father of his right during the proceeding.
¶11 In response to Father's reliance on A.W.S. , K.J.D. distinguishes that case from this one, arguing that the District Court did not err by failing to notify Father of his right to counsel because Father "did not request appointed counsel, nor did he suggest or imply that he did not have the money to retain an attorney," as the mother in A.W.S. had suggested. K.J.D. argues that, by failing to express a desire for counsel, Father failed to preserve the issue for appeal (citing In re Declaring A.N.W. , 2006 MT 42, ¶ 41, 331 Mont. 208, 130 P.3d 619 ("This Court does not consider an issue presented for the first time on appeal.") ). Indeed, in response to the argument in A.W.S. that mother had failed to raise the issue and preserve it for appeal, we stated that, "where Mother was not advised of any right to counsel, she preserved the issue when she explained that she represented herself only because she did not have the money to employ an attorney." A.W.S. , ¶ 21.
¶12 However, having concluded in A.W.S. that the mother's right to counsel was properly before us as a sufficiently invoked issue, it was not necessary for the Court to address the issue we confront here-whether a parent in a termination proceeding, having received no notice of the right to counsel, can waive the right by mere silence. We conclude the right cannot be so waived.
¶13 We acknowledge our line of authority requiring parties to affirmatively invoke the right to counsel. In J.M. , which, as here, was a parental right termination and adoption proceeding, we held, "[w]hile ***66 it does not take 'particular words' to request counsel, some indication must be given to the court that respondent wishes counsel to be appointed because he is indigent or financially unable to secure representation in an involuntary termination proceeding." J.M. , ¶ 25. However, the respondent in J.M. had been represented by private counsel for much of the proceeding, and was notified by the court of his right to obtain new counsel after receiving notice of his attorney's withdrawal. J.M. , ¶ 24. Thus, the record demonstrated the respondent's knowledge of his right to counsel. Similarly, in In re M.V.R. , a state-initiated parental right termination proceeding, we held the district court did not err by failing to appoint another public defender for the indigent mother, when she failed "to indicate to the District Court, in any manner, that she needed another public defender" after she terminated her first public defender, hired private counsel, her private counsel withdrew, and the district court provided notice of her continuing right to counsel. In re M.V.R. , ¶ 51. We reasoned that "Mother was aware of what was required to obtain a public defender," but she had failed to request appointment of other counsel, and thus, "was not denied counsel." In re M.V.R. , ¶ 50. Again, in contrast to Father here, the mother in In re M.V.R. was well aware of her right to counsel.
¶14 Generally, waiver of the right to counsel requires a knowing and voluntary waiver. See § 46-8-102, MCA (a criminal defendant *1033 may waive the right to counsel "knowingly, voluntarily, and intelligently"); see also City of Missoula v. Fogarty , 2013 MT 254, ¶ 12, 371 Mont. 513, 309 P.3d 10 (the court should make inquiry of the defendant "to the extent it deems necessary to ensure that the defendant's waiver of counsel is voluntary, knowing, and intelligent"); § 53-21-119(1), MCA (respondent in a civil commitment proceeding may make an "intentional and knowing" waiver of counsel); In re R.W.K. , 2013 MT 54, ¶ 24, 369 Mont. 193, 297 P.3d 318 (respondent's waiver by his counsel was "intentional and knowing"). In the absence of a statutory standard governing waiver of counsel, we held "that to constitute an effective waiver, the waiver must be intelligently and knowingly given." Edward C. v. Collings , 193 Mont. 426, 429, 632 P.2d 325, 327 (1981).
¶15 In A.W.S ., we cited a decision of the Supreme Court of North Dakota that reversed a parental rights termination order because the indigent parent had not been notified of his right to counsel, but was merely informed that he "might want to consult an attorney."
***67 D.D.F. v. N.D. Dep't of Human Servs. (In re Adoption of J.D.F.) , 761 N.W.2d 582, 587 (N.D. 2009). "[W]e cannot conclude that [father] waived his right to counsel 'with eyes open' when the record clearly indicates that he did not know he had such a right." In re Adoption of J.D.F. , 761 N.W.2d at 588 ; see also Moore v. Hall , 62 A.3d 1203, 1211 (Del. 2013) (holding that a father facing termination of his parental rights did not "knowingly and intelligently waive" his right to counsel because after his public defender withdrew, the court failed to notify him of his right to have new counsel appointed).
¶16 We reach the same conclusion here, because we cannot conclude Father knowingly and voluntarily waived his right to counsel. We recognize, as noted above, waiver can arise from a respondent's actions with regard to the right. J.M ., ¶¶ 24-25 ; In re M.V.R. , ¶¶ 50-51 ; State v. Wilson , 2011 MT 277, ¶ 15, 362 Mont. 416, 264 P.3d 1146 (we "look at the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused," to determine an effective waiver); see also In re Welfare of G.L.H. , 614 N.W.2d 718, 723 (Minn. 2000) (the determination that a parent's waiver of counsel in a termination proceeding "is voluntary and intelligent can be based on the surrounding circumstances of the case," rather than applying more stringent criminal procedures). However, the record here discloses no indication that Father was notified of his right to counsel, or that he otherwise understood that he was entitled to seek appointment of counsel, and declined to do so. Violation of the right to counsel pervades a proceeding and requires reversal. A.W.S. , ¶ 25 (fundamentally fair procedures, including appointment of counsel for an indigent parent, are required in a proceeding to terminate parental rights).
¶17 Therefore, we reverse the District Court's order and remand for a new hearing. On remand, the District Court is directed to appoint counsel for Father if it determines he is financially eligible. Further, any order ultimately entered in this proceeding regarding the parental rights to L.F.R. should clarify the status of the parenting interests of L.F.R.'s paternal great-grandparents under the Final Parenting Plan dated April 16, 2015.
¶18 Reversed and remanded for further proceedings.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The facts recited herein are taken from the District Court's Order and Decree of Adoption. Father did not provide a transcript of the adoption hearing, but we find the record presented here "sufficient to enable [the Court] to rule upon the issues raised." M. R. App. P. 8(2).