

FILED

09/16/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 25-0120

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 212

IN RE THE ADOPTION OF A.K.M. and R.J.M.,

     Minor Children,

B.J.R. and T.E.R.,

     Petitioners and Appellees,

  and

M.M.M.

     Respondent,

  and

A.F.M.,

     Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause Nos. DA-24-4 and DA-24-5
                Honorable John A. Mercer, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Laura M. Reed, Attorney at Law, Missoula, Montana

     For Appellees:

          Emily von Jentzen, Kaufman Vidal Hileman Ellingson PC, Kalispell,
          Montana

Submitted on Briefs: September 3, 2025

Decided: September 16, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Birth father, A.F.M. (Father), appeals an Order from the Montana Twentieth Judicial District Court, Lake County, terminating his parental rights to A.K.M. and R.J.M. based upon a petition for termination of parental rights and adoption that appellee guardians, B.J.R. and T.E.R. (Guardians), filed in a private proceeding under the Montana Adoption Act, § 42-2-607, MCA. We address the following restated issues:

1. *Did the District Court violate Father's constitutional right to equal protection by failing to advise him of his right to counsel, inquire into indigency, and appoint counsel before terminating his parental rights?*

2. *Did the District Court fail to comply with the Montana Adoption Act's mandatory notice-of-hearing provisions, § 42-2-605, MCA?*

We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In March 2024, pursuant to the Montana Adoption Act, B.J.R. and T.E.R., the children's maternal grandfather and step-grandmother—already court-appointed guardians—filed a combined petition to terminate both parents' rights to, and adopt, A.K.M. and R.J.M. At the time, Father was incarcerated at Montana State Prison. He was personally served with the summons and petition; he filed no responsive pleading. The court entered Father's default in May 2024 and set a termination hearing for July 25, 2024. The order setting the hearing was mailed/"cc'd" to Father at the prison.

¶3 Father had no lawyer, did not appear, and the court received no sworn testimony at the July termination hearing. Instead, the court announced it would adopt the allegations of the petition and terminate Father's rights "for the reasons set forth in the petition," then

3

later issued written orders for each child memorializing that ruling. The record on appeal contains no proof that Father was served with a hearing notice containing the warning that failure to appear constitutes a waiver of interest in custody of the child and will result in termination of parental rights as required by § 42-2-605, MCA.

¶4      In early 2025, Father obtained permission to file out-of-time appeals. The appeals were consolidated. The briefs squarely raised (1) the failure to appoint counsel under *A.W.S. v. A.W.* (*In re A.W.S.*), 2014 MT 322, 377 Mont. 234, 339 P.3d 414, and *In re L.F.R.*, 2019 MT 2, 394 Mont. 61, 432 P.3d 1030; (2) noncompliance with § 42-2-605, MCA; and (3) due process deficiencies.

## STANDARD OF REVIEW

¶5      We review constitutional questions and statutory interpretations de novo for correctness. *In re L.F.R.*, ¶ 6; *In re A.W.S.*, ¶ 10 (our review of constitutional questions is plenary). We generally review termination decisions for abuse of discretion, but where the challenge concerns whether the court employed fundamentally fair procedures or complied with mandatory statutes, our review is de novo. *See In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408; *J.W.M. v. R.H.* (*In re J.W.M.*), 2015 MT 231, ¶¶ 11-12, 380 Mont. 282, 354 P.3d 626.

## DISCUSSION

¶6      *1. Did the District Court violate Father's constitutional right to equal protection by failing to advise him of his right to counsel, inquire into indigency, and appoint counsel before terminating his parental rights?*

¶7      Article II, Section 4, of the Montana Constitution guarantees that "[n]o person shall be denied the equal protection of the laws." Applying this provision in *In re A.W.S.*, we

4

held that indigent parents whose rights are at stake in private Montana Adoption Act terminations are similarly situated to indigent parents in state-initiated abuse-and-neglect proceedings for purposes of access to counsel. Because both groups face the same fundamental interest—the potential permanent loss of the parent-child relationship—we applied strict scrutiny and concluded there is no compelling state interest justifying disparate treatment. *In re A.W.S.*, ¶¶ 15-26. Under that reasoning, the Equal Protection Clause requires parity: when an indigent parent in an abuse-and-neglect case has a statutory right to court-appointed counsel, *see* § 41-3-425(1)-(2), MCA, an indigent parent in a private Montana Adoption Act termination is constitutionally entitled to the same protection. We reaffirm that constitutional rule today.

¶8 Our subsequent cases have clarified how this equal-protection guarantee operates in practice. Once *In re A.W.S.* established that indigent parents in private adoption terminations must be treated the same as those in abuse-and-neglect proceedings, the question became how courts must implement that right to counsel and under what circumstances, if any, a parent may waive it. We addressed that inquiry in *In re L.F.R.* and *In re J.W.M.*, which together define the scope of the court's duties and the limits of waiver.

¶9 In *In re L.F.R.*, we emphasized that a parent's silence or nonparticipation cannot defeat the constitutional right to counsel when the district court never advised the parent of the right to appointed counsel. We explained that waiver of a constitutional right must be knowing and intelligent. *In re L.F.R.*, ¶¶ 12-16. Therefore, absent a clear warning of the consequences of failing to appear and an opportunity to request counsel, a parent's failure to affirmatively ask for representation does not forfeit the right. Whereas *In re L.F.R.*

5

protects parents from forfeiting counsel rights, *In re J.W.M.* illustrates the opposite scenario. By contrast, in *In re J.W.M.*, we held that a parent who appeared, participated, and was repeatedly advised that appointed counsel would be available upon a showing of indigency could not later claim constitutional error when he gave no indication of indigency. *In re J.W.M.*, ¶¶ 21-25. Read together, these cases confirm that, while an indigent parent has a responsibility to cooperate with the court's inquiry once advised of the right to counsel, the constitutional obligation to provide an advisal and inquire meaningfully into the right rests squarely with the district court. Without such an advisal, as here, there can be no valid waiver.

¶10     Here, the record reflects that Father was incarcerated and unrepresented throughout the proceedings and that the District Court never advised him of the right to appointed counsel and made no indigency inquiry.[1] The court then terminated Father's parental rights by adopting the guardian petitioners' allegations without counsel to test or present evidence. On these facts, *In re A.W.S.* and *In re L.F.R.* are controlling, and *In re J.W.M.* is materially distinguishable. The District Court was obliged to (1) advise Father that, if indigent, he was entitled to appointed counsel before termination could proceed and (2) conduct an indigency inquiry and appoint counsel upon a qualifying showing—before

---

[1] Guardians concede that no advisal occurred, arguing instead that Father never asked. They contend that *In re L.F.R.* does not apply because, unlike the parent in that case, Father did not appear at all in these proceedings. But, for reasons discussed in Issue 2, Father was not given proper notice of the proceedings to terminate his parental rights, including a mandatory warning of the consequences of his failure to appear.

terminating his parental rights. *See In re A.W.S.*, ¶¶ 23-26; *In re L.F.R.*, ¶¶ 12-17. The failure to do so was constitutional error.[2]

¶11     *2. Did the District Court fail to comply with the Montana Adoption Act's mandatory notice-of-hearing provisions, § 42-2-605, MCA?*

¶12     Adoption and termination proceedings under Title 42, MCA, require more than generic mailing or notice. The Legislature has enacted detailed provisions governing notice of hearings in adoption and termination proceedings, reflecting the gravity of permanently severing the parent-child relationship. Section 42-2-605(1), MCA, mandates that the petitioner serve a notice of hearing on the parent "in any manner appropriate under the Montana Rules of Civil Procedure or in any manner that the court may direct." This requirement ensures formal service rather than casual or incidental notice. Section 42-2-605(2), MCA, then specifies that the notice "must inform the . . . parent that failure to appear at the hearing constitutes a waiver of the individual's interest in custody of the child and will result in the court's termination of the individual's rights to the child." Section 42-2-605(3), MCA, requires that the server file proof of service with the court before the hearing, so the record clearly demonstrates that proper notice and termination warnings were given. Finally, § 42-2-605(4), MCA, requires the court to adjourn the hearing if the parent does not appear and proof of service has not been filed, preventing default terminations based on uncertainty about whether the parent received notice. Together, these provisions establish a mandatory framework that protects due process by

---

[2] Father also separately asserts that the District Court's failure to appoint counsel violated constitutional due process, but his arguments on this point pertain mostly to his lack of notice and opportunity to contest adoption, which we separately address in Issue 2.

ensuring parents receive timely, adequate, and documented warning of the risk of termination.

¶13 The record in this case demonstrates noncompliance with each step of § 42-2-605, MCA. The District Court mailed an order setting the July 25, 2024 termination hearing and "cc'd" Father at the prison, but the record contains no separate notice of hearing containing the statutory warning that failure to appear would constitute a waiver of his rights and could result in termination. No proof of service was filed, as the statute expressly requires. Despite Father's absence, the court did not adjourn the hearing but instead proceeded to terminate his rights to both children based solely on the allegations contained in Guardians' petition.

¶14 Guardians urge us to uphold the judgment by relying on the evidentiary presumption that a properly mailed letter is presumed received. *See* § 26-1-602(20), (24), MCA. But that generic presumption cannot substitute for the specific and mandatory safeguards imposed by § 42-2-605, MCA. The Legislature required not merely mailing, but formal service of a hearing notice with explicit parental rights termination warning, a filed proof of service, and an adjournment if proof is lacking. Allowing the mailing presumption to cure these omissions would collapse the statutory protections into an ordinary civil mailing rule and would erode the due-process assurances the Montana Adoption Act demands in proceedings that risk permanently severing parental rights.

¶15 Failure to comply with § 42-2-605, MCA, is not a mere technical defect. These statutory requirements embody the constitutional principle that due process demands notice and an opportunity to be heard before the State, or private petitioners invoking State

8

authority, may terminate a parent-child relationship. *See In re A.S.*, ¶ 12 (due process requires that parents not be placed at an unfair procedural disadvantage in termination proceedings). By mandating service of a formal hearing notice, including clear warning of the consequences of nonappearance, requiring proof of service filed in the record, and directing adjournment if service is not proven, the Legislature ensured that parents would have an adequate and documented opportunity to participate before parental rights are extinguished. These safeguards are not optional; they are the statutory mechanism by which due process is guaranteed in the Montana Adoption Act context. Failing to adhere to these safeguards not only contravenes the statute but also undermines the constitutional guarantee of fundamental fairness.

¶16 Finally, these violations cannot be excused as harmless error. We have long emphasized that "the doctrine of harmless error should be applied in parental termination cases only in the rarest of occasions and with great caution." *In re J.C.*, 2008 MT 127, ¶ 53, 343 Mont. 30, 183 P.3d 22. Because parents' and children's constitutional rights are at stake, procedural safeguards must be honored with utmost rigor. Here, the combined errors strike at the heart of those safeguards. Father was never advised of his constitutional right to counsel, was not represented at any stage, and received no statutorily compliant notice of the termination hearing. The District Court proceeded without sworn evidence, terminating his rights solely by adopting the allegations Guardians made in their petition. To declare such profound defects "harmless" would require speculation about what might have occurred if Father had received notice and counsel—a form of conjecture our

precedents forbid. Harmless error review cannot cure the absence of fundamental procedures designed to protect the fairness and integrity of termination proceedings.

¶17 The deficiencies in notice and the denial of counsel were compounded by the absence of any evidentiary foundation at the termination hearing. The Montana Adoption Act requires that parental rights may be terminated only upon clear and convincing evidence establishing both a statutory ground for termination and that termination is in the child's best interests. *In re Adoption of K.P.M.*, 2009 MT 31, ¶ 10, 349 Mont. 170, 201 P.3d 833. That standard demands live testimony, documentary exhibits, or other sworn proof tested through the adversarial process—not mere recitation of allegations contained in a petition. *See In re A.S.*, ¶¶ 12, 20; *In re A.S.A.*, 258 Mont. 194, 198, 852 P.2d 127, 129 (1993) (procedural fairness requires an opportunity to present and challenge evidence). By adopting the petition allegations wholesale, without requiring sworn testimony or offering Father the opportunity to test that evidence through counsel, the District Court failed to meet the evidentiary threshold the statute and due process demand. Termination based solely on unsworn pleadings is antithetical to the heightened evidentiary safeguards that reflect the gravity of permanently severing the parent-child bond.

## CONCLUSION

¶18 The orders terminating Father's parental rights are reversed, and the matter is remanded with the following directions, each grounded in the constitutional and statutory principles discussed above. The District Court must promptly advise Father, on the record, that Article II, Section 4, of the Montana Constitution, as interpreted in *In re A.W.S.* and *In re L.F.R.*, entitles him to court-appointed counsel if indigent in a Montana Adoption Act

10

termination proceeding. The court must then conduct a meaningful inquiry into Father's financial status and, if indigency is shown, appoint counsel to represent him throughout any further proceedings. *See In re A.W.S.*, ¶¶ 23-26; *In re L.F.R.*, ¶¶ 12-17.

¶19 Before any new termination hearing may proceed, the petitioners must serve Father with a notice of hearing that strictly complies with § 42-2-605, MCA. That notice must be served in a manner permitted by the Montana Rules of Civil Procedure or as the court directs and must include the explicit statutory warning that nonappearance will constitute a waiver and may result in termination; proof of service must be filed with the court; and if Father does not appear and proof of service is lacking, the court must adjourn the hearing until proper service is accomplished. These steps are mandatory, not discretionary.

¶20 Any termination decision must be supported by sworn testimony, exhibits, or other admissible evidence sufficient to meet the clear and convincing evidence standard codified in the Montana Adoption Act and required by due process. The District Court must ensure that Father, through counsel, if appointed, has a meaningful opportunity to present evidence, cross-examine witnesses, and contest the petitioners' case. Termination may not rest on unsworn pleadings or default alone. *See In re K.P.M.*, ¶ 10; *In re A.S.*, ¶ 12.

¶21 Reversed and remanded with directions.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

11